Argued March 20, reversed and remanded for trial
August 27, 1979

STATE OF OREGON,
*Appellant,*

*v.*

ELDRED BERDELL MILLER,
*Respondent.*

(No. T57026, CA 12918)

598 P2d 1262

Jan P. Londahl, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Arnie Rothlisberger, Stayton, argued the cause for respondent. With him on the brief was Duncan, Duncan & Tiger, Stayton.

Before Schwab, Chief Judge, and Tanzer, Richardson, and Roberts, Judges.

RICHARDSON, J.

**RICHARDSON, J.**

Defendant was charged with driving while under the influence of intoxicants, ORS 487.540. The trial court granted his motion to suppress the breathalyzer test results on the ground he had been denied a reasonable opportunity to obtain an independent blood test pursuant to ORS 487.810. The state appeals.

Defendant was stopped at 3:12 a.m. on April 30, 1978. He was taken to the jail by the arresting officer and they arrived at 3:40 a.m. He took the breathalyzer at 4:03 a.m. Prior to completion of the booking procedure following the breathalyzer test, defendant requested that he be taken to a hospital for a blood test. The arresting officer was prepared to transport him to the hospital but a telephone call revealed the hospital would not perform a blood test unless defendant could pay in cash or with a credit card. Defendant did not have the cash or credit card and therefore declined to be taken to the hospital.

Defendant contacted a friend who brought money for defendant's bail. The officer again asked defendant if he wished to be taken to the hospital and defendant replied he would take the blood test "in the morning." The officer replied that a test obtained "in the morning" would be of no value because the alcohol in his blood would have dissipated.

Defendant bailed out of custody at approximately 5:00 a.m. He did not go to the hospital for a blood test because he believed, based on the officer's statement, that a test at that time would be of no value.[1] The court concluded that:

"* * *Statements which convince the defendant that it is no use to take the test are just as persuasive as physical restraint.* * *"

---

[1] The trial court found:

"I believe the defendant believed the officer and that he did not procure the blood test because he, the defendant, thought it would be of no value."

[689]

Based on this analysis of the facts and our decision in *State v. Hilditch*, 36 Or App 435, 584 P2d 376 (1978), the court suppressed the breathalyzer test results.

In *State v. Hilditch, supra,* we construed ORS 487.810, which provides:

> "In addition to a chemical test of the breath, blood, urine or saliva administered upon the request of a police officer, a person arrested for driving a motor vehicle upon the highways of this state while under the influence of intoxicants shall be permitted upon request, at his own expense, reasonable opportunity to have any licensed physician and surgeon, licensed professional nurse or qualified technician, chemist or other qualified person of his own choosing administer a chemical test or tests for the purpose of determining the alcoholic content of his blood. The failure or inability to obtain such a test or tests by a person shall not preclude the admission of evidence relating to a test taken upon the request of a police officer."

We determined that the last sentence of that statute does not prevent a court from suppressing a breathalyzer test result where conduct of the police have prevented the arrestee from having a reasonable opportunity to seek an independent chemical blood alcohol test.

Hilditch was arrested for driving under the influence of intoxicants. He submitted to a breathalyzer test requested by the police and then requested that he be taken to the Veterans' Hospital where he could obtain a blood test without charge. The police instead took him to a community hospital where he was refused a blood test because he did not have funds to pay for it. He then called his wife and instructed her to bring money to the hospital. The police officer waited with the defendant only 15 minutes before returning him to jail, although he was aware it would take defendant's wife at least 30 minutes to make the trip. Defendant subsequently bailed out of custody and went to the hospital for the blood test, but was told by the hospital staff the test would be of no value because

of the lapse of time. These facts illustrate the police actively prevented Hilditch from taking the blood test he requested.

In the case at issue defendant had an opportunity to go to the hospital for the blood test after he was released on bail. He exercised a free will choice not to do so. The statement by the police officer respecting the validity of a blood test after defendant's release is at most ambiguous. The term "in the morning" could be understood to refer to anytime after midnight or to the time when the ordinary daily activities begin. Whether the statement as understood by defendant was misleading it was not affirmative conduct on the part of the police that denied defendant a reasonable opportunity to obtain an independent blood alcohol test. The defendant had an opportunity to take the test but decided not to take the opportunity. We conclude the court erred in suppressing the breathalyzer test results.

Reversed and remanded for trial.

TANZER, J., specially concurring.

The majority opinion reaches the correct result, but, in my view, does so by a fallacious reliance on *State v. Hilditch*, 36 Or App 435, 584 P2d 376 (1978). This is the inconsistency: (1) the rule of *Hilditch* is that where police action precludes defendant's exercise of his statutory right to an independent test, there has not been statutory compliance in the taking of the breathalyzer test and the results thereof are inadmissible; (2) the trial court found, supported by evidence, that defendant wished to obtain an independent test, but was prevented from doing so by his reliance on police action. Logically, then, the breathalyzer result should be suppressed. Illogically, however, it is not ordered suppressed. Instead, the majority cites *Hilditch* and tiptoes away from it.

We should either follow *Hilditch* or overrule it. I would overrule it because I believe it to be inconsistent with the statutory scheme regulating breathalyzer evidence.

The issue in this case is whether the breathalyzer test result should be excluded. The issue is not whether the police conduct after the test was proper. We are called upon to apply an exclusionary rule.

I begin with the proposition that the fact-finding process should not be hindered by rules excluding probative evidence unless an extraordinarily high societal objective requires exclusion. Hence, exclusion is normally restricted to the effectuation of constitutional rights and only rarely to enforce statutory rights. *See State v. Valdez*, 277 Or 621, 561 P2d 1006 (1977).

In *Hilditch*, we created an exclusionary rule of statutory origin, however the statutes which *Hilditch* purports to effectuate contain a directive that they not be enforced by an exclusionary rule. ORS 487.810 provides:

> "* * * The failure or inability to obtain such a test or tests by a person shall not preclude the admission of evidence relating to a test taken upon the request of a police officer."

It is clear that the statute provides no basis for a rule of exclusion of otherwise competent, probative evidence.

A trial court reading *Hilditch* and reading this case would have a hard time discerning what it is to do. I would overrule *Hilditch* and clear the air.