[No. 6290-2-III.  Division Three.  February 28, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN DOUGLAS KINARD, *Appellant.*

---

*Dennis A. Dellwo* and *Dellwo, Rudolf & Schroeder,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Clark Colwell, Deputy,* for respondent.

MUNSON, J.—Steven Douglas Kinard appeals his convictions of first degree burglary, first degree theft, and second degree burglary, contending the court abused its discretion in allowing a victim to testify the burglar "sounded black to me." We affirm.

At approximately 2:30 a.m. on August 5, 1983, Barbara Cardell heard an intruder in her apartment and screamed. A man jumped on her bed, threatened to kill her if she did not shut up, pushed her face down and jammed a pillow over her head. She thought she felt a gun, and thought she was going to die from being suffocated by the pillow. He pulled a gold ring off her finger. She then heard the voice of a second intruder. A jewelry case, other jewelry and $10 to $15 were also taken.

Mrs. Cardell telephoned the police after the intruders left, and Kinard was apprehended in the vicinity.

Mrs. Cardell, although born in New Zealand, had been married to a United States serviceman and had lived in the South for several years and also on a United States military post overseas. She testified that from these experiences she perceives blacks as having a certain inflection or accent. Over objection, she stated of the man who jumped on her bed: "He was young. He was male. He sounded black to me." She further testified his voice had a moderate to low pitch, and he was big and heavy. She testified, without

objection, the other voice she heard was softer and sounded like a young white male.

A jury convicted Kinard of first degree burglary and first degree theft in connection with the Cardell burglary and second degree burglary in connection with another burglary which took place in the same building at approximately the same time. Kinard appeals.

Kinard argues the court erred in allowing Mrs. Cardell to testify the perpetrator "sounded black". He contends the testimony had an inflammatory effect on the jury, particularly in regard to the Cardell burglary because the evidence was so slim on those counts. ER 403; *State v. Smith,* 5 Wn. App. 237, 487 P.2d 227 (1971).

Judge Clarke granted Kinard's pretrial motion in limine, but stated the prosecution could renew the motion if it found some case authority. Judge Lally, the trial judge, ruled Mrs. Cardell's testimony would be admissible. He likened her testimony to saying someone had an Irish brogue, and stated the basis for her opinion could be explored on cross examination. Kinard argues Judge Lally was bound by Judge Clarke's rulings, and it was error to entertain the State's motion for reconsideration. A trial court's order or ruling is subject to revision at any time before final judgment. *Owens v. Kuro,* 56 Wn.2d 564, 566, 354 P.2d 696 (1960); *Snyder v. State,* 19 Wn. App. 631, 636, 577 P.2d 160 (1978). *See also State v. Stiltner,* 80 Wn.2d 47, 54–55, 491 P.2d 1043 (1971).

Kinard treats Mrs. Cardell's testimony as voice identification and relies on *State v. Gallo,* 20 Wn. App. 717, 582 P.2d 558 (1978). That case held an overheard conversation may be authenticated by subsequently acquired circumstantial evidence. *See also* ER 901(b)(5); *State v. Whalon,* 1 Wn. App. 785, 464 P.2d 730 (1970). Here, Mrs. Cardell never sought to identify her attacker as Kinard; she stated only her attacker was big, heavy, male and sounded like a black man. Kinard was linked to her apartment through the tracking dog and through his proximity in time and place to the burglary.

Kinard argues her testimony was impermissibly sugges-
tive, citing cases dealing with police lineup and showup
procedures. However, there is no indication a lineup or a
showup occurred here. Where an in–court identification is
challenged and there is no issue of impermissibly suggestive
procedures, the question of reliability goes only to the
weight of the testimony and not its admissibility. That is,
the subject can be adequately explored on cross examina-
tion. *State v. Vaughn*, 101 Wn.2d 604, 682 P.2d 878 (1984);
*State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975). While
there was no in–court identification here, an analogy can be
drawn to those cases. Here, there was absolutely no cross
examination regarding how Mrs. Cardell concluded her
attacker sounded like a black man.

A lay witness may give an opinion, so long as it is ration-
ally based on her perceptions and helpful to the jury. ER
701. A proper lay opinion would include the speed of a
vehicle, the mental responsibility or health of another, the
value of one's own property and identification of a person.
The trial court is vested with wide discretion under ER 701.
Comment, ER 701. While Mrs. Cardell's testimony proba-
bly could have been given in a more raw form by way of a
detailed description of her assailant's accent and inflection,
there was no prejudicial error.[1] Mrs. Cardell's testimony
could have been scrutinized on cross examination, but it
was not.

Kinard argues it was prejudicial error for the State not to
have conducted a lineup wherein Mrs. Cardell could have
compared the voice she heard with several others. He
argues such lineups are mandatory, citing *State v. Hilliard*,

---

[1]In *State v. Phillips*, 25 N.C. App. 5, 212 S.E.2d 172 (1975), a robbery victim
testified the robbers "'sounded like black people talking, that was as much identi-
fication as I could tell.'" *State v. Phillips, supra* at 8. The court held the testi-
mony was proper because the victim was not purporting to identify his assailants
by race, but merely testified to the dialect he heard. The court noted the victim
later stated he did not know whether the robbers were black or white. In *State v.
McDaniel*, 392 S.W.2d 310 (Mo. 1965), the court went further and held testimony
the robbers had Negro accents was relevant to identify their probable race.

89 Wn.2d 430, 573 P.2d 22 (1977); *State v. Nettles,* 81 Wn.2d 205, 500 P.2d 752 (1972); and *State v. Smith,* 37 Wn. App. 381, 680 P.2d 768, *review denied,* 101 Wn.2d 1025 (1984). None of the cited cases mandate a lineup; likewise, none of them preclude the defense from requesting one, or from arguing the matter to the jury. The prosecutor questioned the reliability of voice identification lineups because of the ease with which voices can be disguised.

Kinard argues *State v. Henry,* 36 Wn. App. 530, 676 P.2d 521 (1984) requires the trial court to weigh ER 403 factors on the record. The appellate court there held only the record revealed the trial court had duly weighed the countervailing factors and there was therefore no abuse of discretion. In *State v. Rhoads,* 101 Wn.2d 529, 681 P.2d 841 (1984), the court held the requirement of balancing ER 609 factors on the record imposed in *State v. Jones,* 101 Wn.2d 113, 677 P.2d 131 (1984) was not retroactive. We find no error.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

The judgment is affirmed.

McINTURFF, A.C.J., and THOMPSON, J., concur.

Review denied by Supreme Court June 7, 1985.