Argued and submitted November 30, 1992, affirmed August 4, 1993

STATE OF OREGON,
*Respondent,*

*v.*

TERESA MARIE DARLIN,
aka Tree Dolci, aka Teresa Marie Dolci,
*Appellant.*

(9160692, 9160693, 9160694;
CA A73266 (Control), A73267, A73268)
(Cases Consolidated)

857 P2d 859

Hari Nam S. Khalsa, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Youlee Yim You, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

ROSSMAN, P. J.

---

* Leeson, J., *vice* Buttler, J., retired.

## ROSSMAN, P. J.

Defendant seeks reversal of her convictions of driving under the influence of intoxicants (DUII), ORS 813.010, failure to carry or present a driver's license to a police officer, ORS 807.570, and careless driving. ORS 811.135. She contends that (1) the results of her Intoxilyzer test should have been suppressed because she was denied the right to an independent blood test; (2) the operator's license offense should have been dismissed on former jeopardy grounds; and (3) she was entitled to a jury trial on the careless driving charge. We affirm.

At approximately 6 p.m. on May 9, 1991, Officer Vitus saw defendant driving erratically and stopped her. Vitus approached the car and asked defendant for her driver's license. She did not produce it.[1] Detecting the odor of alcohol, Vitus asked defendant to perform a series of field sobriety tests. After defendant performed poorly on the tests, Vitus informed her that he was placing her under arrest for DUII. She responded by saying: "No fucking way. I'm not either." She also threw up her arms and formed what Vitus perceived to be a closed fist with one of her hands. Vitus grabbed her wrist, spun her around and pushed her up against the back of her car. Defendant began kicking at Vitus' legs. In an attempt to secure defendant, Vitus placed her face-down on the hood of his police car. Defendant continued kicking at Vitus. She kicked him twice in the groin during the encounter. Defendant claims that she kicked him because he forcefully shoved his knee between her legs. Vitus denies that claim.

Vitus called for a backup. Officer McComas and another officer arrived shortly thereafter and helped get defendant into a police car. Defendant claims that the officers used excessive force in placing her into the car. According to the officers, defendant continued to display "aggressive behavior" on the way to the station.

Upon arrival, Vitus and McComas took defendant to the Intoxilyzer room. While there, defendant appeared calm and collected one moment, but became violent and hostile the next. Before administering the Intoxilyzer test, Vitus advised

---

[1] It was later determined that defendant was not licensed to drive a motor vehicle.

defendant that she was entitled to an independent blood test. Defendant submitted to the Intoxilyzer test, which revealed a blood alcohol content of .12 percent by weight. After completing the Intoxilyzer test, defendant requested a blood test. She then kicked McComas' shin.[2] Defendant claims that she kicked him because he was being verbally abusive toward her. Vitus and McComas then forced defendant to sit down and told her that they would take her to obtain a blood test if she regained her composure. Defendant denies that the officers told her that. She continued her combative behavior toward both officers. Each grasped one of defendant's arms and began to escort her out of the Intoxilyzer room. According to Vitus and McComas, defendant placed her feet against the doorway and would not allow them to leave. Defendant admitted being uncooperative and refusing to walk out of the room, but denied blocking the doorway with her feet. After she was removed from the room, she continued to "thrash around." The intake deputies placed her in a segregation cell.

An independent blood test was never obtained. At the suppression hearing, Vitus testified that defendant was not taken to a hospital or other medical facility because of her belligerent and assaultive behavior. He acknowledged that it would have been possible to transport defendant in restraints, but said that, given her unpredictably violent behavior, he believed that she remained a threat to herself, the escorting officers and the medical staff who would have administered the blood test.

Defendant first contends that she was not given a "reasonable opportunity" to obtain an independent chemical test of her blood, as required by ORS 813.150. She argues, therefore, that the trial court erred in denying her motion to suppress the results of the Intoxilyzer test. *See State v. Hilditch*, 36 Or App 435, 584 P2d 376 (1978).

ORS 813.150 provides:

"In addition to a chemical test of the breath, blood or urine administered under ORS 813.100 or 813.140, upon the request of a police officer, *a person shall be permitted upon*

_____

[2] McComas testified at the suppression hearing that he was in pain for five to ten minutes from defendant's kick and that he sustained a two-inch bruise that lasted five or six days.

*request*, at the person's own expense, *reasonable opportunity to have* any licensed physician and surgeon, licensed professional nurse or qualified technician, chemist or other qualified person of the person's own choosing administer a chemical test or test of the person's breath or blood for the purpose of determining the presence of a controlled substance in the person. * * *" (Emphasis supplied.)

In *State v. Hilditch, supra*, the defendant, who had been arrested for DUII and had submitted to an Intoxilyzer test, requested an independent blood test. The arresting officer took him to a hospital, where he was refused a blood test, because he lacked the funds to pay for it. He then called his wife and asked her to bring him the money for the test. The officer moved the defendant back to the jail after waiting only 15 minutes for the defendant's wife to arrive, although he knew that she would not reach the hospital for at least another 15 minutes. In holding that the defendant was denied his statutory right to obtain a blood test under *former* ORS 487.810,[3] we noted that

".[t]he critical fact here is that the police, having undertaken to take defendant to the hospital, did not allow reasonable time for the defendant's wife to bring the funds * * *." 36 Or App at 438.

In *State v. Miller*, 41 Or App 687, 598 P2d 1262 (1979), the defendant was arrested for DUII and, after completing an Intoxilyzer test at 4:03 a.m., requested that he be taken to a hospital for a blood test. After discovering that he did not have the means to pay for the test, the defendant declined the arresting officer's invitation to drive him to a hospital. Although he was released on bail at 5 a.m., defendant did not go to the hospital to obtain a blood test because the officer had told him that a blood test administered "in the morning" would have no value. Relying on *Hilditch*, we held that the defendant's statutory rights under *former* ORS 487.810 had not been violated because there was no "affirmative conduct on the part of the police that denied defendant a reasonable opportunity to obtain an independent blood alcohol test." 41 Or App at 691.[4]

---

[3] *Repealed by* Or Laws 1983, ch 338, § 978. *Former* ORS 487.810 provided essentially the same right to an independent blood test as does ORS 813.150.

[4] In *Miller*, we noted that the officer's conduct in *Hilditch* violated the defendant's right to an independent blood test because "the police actively prevented Hilditch from taking the blood test he requested." 41 Or App at 691.

■ A defendant is denied a "reasonable opportunity" to obtain an independent blood test under ORS 813.150 when police conduct either prevents or hinders the defendant's attempt to obtain a test. Defendant argues that, because the officers provoked her violent behavior during the arrest and at the station, they engaged in conduct that prevented her from exercising her statutory right to a blood test. The trial court found otherwise:

> "Dealing with the blood test issue first * * *. *I find that the events occurred as testified to by the officers and in the sequence as testified to by the officers* * * *. I find that defendant did ask for a blood test and did ask several times for a blood test. *The officers asked defendant to calm down, but defendant did not and, in fact, kicked Officer McComas on the shin.*
>
> "Under all the circumstances, the officers could reasonably conclude that, *in view of defendant's volatile and unpredictably violent mood*, she could not be transported to a hospital or other medical facility without significant risk of injury to herself or others including medical staff at a medical facility. That was the problem. So, under these circumstances, *I find that the failure to obtain a blood test is due to the defendant.*" (Emphasis supplied.)

Those findings are supported by the evidence, and we are bound by them. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). The findings support the conclusion that the police did not actively engage in conduct that prevented or hampered defendant's attempt to obtain an independent blood test. We hold, therefore, that defendant was not denied a "reasonable opportunity" to obtain a blood test by the officers, and that the trial court properly denied her motion to suppress the results of the Intoxilyzer test.

■ In her second assignment of error, defendant asserts that the trial court should have dismissed the charge of failure to carry or present a driver's license on the ground of former jeopardy under the Oregon Constitution, Article I, section 12, or ORS 131.515(2).[5] In September, 1991, defendant pled guilty to driving without a license, a Class B traffic

---

[5] Article I, section 12, provides:

"No person shall be put in jeopardy twice for the same offence [sic] * * *."

infraction.[6] ORS 807.010. She was tried on the charge of failure to carry or present a license, a Class C misdemeanor, in December, 1991. Defendant asserts that that prosecution, which arose out of the same driving incident that gave rise to the driving without a license charge, is barred by her plea of guilty to driving without a license. We disagree.

. ORS 131.515(2) is a codification of Article I, section 12. That statute provides:

> "No person shall be separately prosecuted for two or more offenses[7] based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

ORS 153.585(1) provides an exception to statutory restrictions on a subsequent prosecution when one of the offenses is a traffic infraction:

> "Notwithstanding ORS 131.505 to 131.535, if a person commits both a crime and a traffic infraction as part of the same criminal episode, the prosecution for one offense shall not bar the subsequent prosecution for the other."

Under that provision, defendant's prosecution for the infraction of driving without a license does not bar a subsequent prosecution for the crime of failure to carry or present a driver's license.

However, we stated in *State v. Kambra*, 93 Or App 156, 159-60, 761 P2d 539 (1988), that "the statutory exception created by ORS 153.585 cannot * * * prevail over the constitutionally created double jeopardy protection of Article I, section 12," which bars successive prosecutions of "offenses which are criminal in nature." Defendant argues that Article I, section 12, precludes prosecution for failure to carry or present a driver's license, because the infraction of driving without a license is criminal in nature. The critical inquiry, therefore, is whether the offense of driving without a license can be properly classified as a traffic crime, notwithstanding its statutory classification as an infraction. If so, the

---

[6] A guilty plea is a "prosecution," for purposes of Article I, section 12. *State v. Kambra*, 93 Or App 156, 158 n 2, 761 P2d 539 (1988).

[7] ORS 161.505 defines an "offense" as "either a crime or * * * an infraction."

constitutional prohibition against double jeopardy is implicated. *See State v. Kambra, supra; State v. Marquette,* 39 Or App 519, 592 P2d 1062 (1979).

For the same reasons that we found the offense of driving with switched license plates to be a noncriminal infraction, *see State v. Kambra, supra,* 93 Or App at 159, we conclude that driving without a license is also a noncriminal infraction. Therefore, a prosecution for that offense does not provide a basis for a claim of constitutional double jeopardy. Accordingly, we hold that the trial court did not err in denying defendant's motion to dismiss the charge for failure to carry or present a driver's license.[8]

■   In her final assignment of error, defendant argues that the trial court erroneously permitted the state to submit the charge of careless driving, a Class B traffic infraction, to the court. She contends that it should have been submitted to the jury as a lesser-included offense of the crime of reckless driving. ORS 811.140. Again, we disagree.

First, as we recognized in *State v. Mink,* 30 Or App 339, 567 P2d 1033 (1977),[9] submitting a traffic infraction to a jury as a lesser-included offense is forbidden by ORS 153.575(1), which provides, in relevant part:

"The trial of any traffic infraction shall be by the court without a jury."

*See also* ORS 153.240(1); *State v. Cuffee,* 87 Or App 293, 296, 742 P2d 637 (1987).

Second, in *Mink,* we expressly approved of the procedure employed by this trial court, and we reject defendant's contention that the procedure should be abandoned. *See also State v. Cuffee, supra.* We remain convinced that, because of "the different standards of proof [between a traffic infraction

---

[8] Defendant argues for the first time on appeal that the Fifth Amendment to the United States Constitution also bars the prosecution. Because that argument was not raised below, it was not preserved for appeal and we do not address it. ORAP 5.45(2); *State v. Kessler,* 289 Or 359, 371 n 17, 614 P2d 94 (1980); *State v. Hart,* 84 Or App 237, 239 n 2, 733 P2d 913 (1987). Defendant's assertion does not present the exceptional circumstance or manifest error which would justify our consideration of her claim.

[9] *State v. Mink, supra,* interpreted *former* ORS 484.375(1), the predecessor to ORS 153.575(1). *Former* ORS 484.375(1) was renumbered ORS 153.575(1) by 1981 Oregon Laws, chapter 612, section 25.

and traffic crime] and other procedural variables,'' submission of a traffic infraction to a jury as a lesser-included offense of a traffic crime is unworkable. Accordingly, we hold that the trial court did not err in pronouncing judgment on the careless driving charge.

    Affirmed.