Argued and submitted February 26, reversed and remanded May 21, 1997

# STATE OF OREGON,
*Appellant,*

*v.*

# WILLIAM R. ANDES,
*Respondent.*

## (Z 291977; CA A90777)

939 P2d 102

Rolf C. Moan, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

John Henry Hingson, III, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Defendant is charged with driving while under the influence of intoxicants (DUII). ORS 813.010. Before trial, he moved to suppress the Intoxilyzer test result obtained from him after his arrest, and the trial court allowed his motion. The state appeals. We reverse and remand.

■ In reviewing an order resolving a motion to suppress, we are bound by the trial court's findings of historical fact if they are supported by the evidence in the record. We determine whether the trial court applied the proper legal principles to those findings and reached a correct legal conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

On June 8, 1995, defendant was arrested for DUII. Before performing the Intoxilyzer test, defendant talked to his attorney by telephone. Counsel for defendant also spoke on the telephone to Powell, the arresting officer. Counsel informed Powell that he had advised defendant not to answer questions but that he also had told him to take the Intoxilyzer test. There was also a conversation between Powell and counsel about a second breath test.

Following his conversation with defense counsel, Powell administered a breath test to defendant that showed defendant's blood alcohol content to be .093 percent.[1] Powell told defendant that he had the right to an independent chemical test, but defendant did not request a second breath test or indicate any interest in an additional test. Soon thereafter, defendant was released when his wife came to the police station to pick him up.

Defendant moved before trial "for an order excluding the results of the breath test" based on the "[l]ack of sufficient foundation, including, but not limited to, non-compliance with constitutional commands and the relevant statutes and administrative rule." Defendant argued that ORS 813.150[2]

---

[1] A person is under the influence when he or she has a blood alcohol content of .08 percent or more. ORS 813.010(1)(a).

[2] ORS 813.150 provides:

"In addition to a chemical test of the breath, blood or urine administered under ORS 813.100 or 813.140, upon the request of a police officer, a person shall be permitted upon request, at the person's own expense, reasonable

requires the police to administer a second Intoxilyzer test upon request and that the failure of Powell to "honor" defendant's counsel's request required suppression of the evidence of the result of the first test.

The trial court granted defendant's motion, ruling:

"It does seem to me that the contemplation of 813.150 and 813.160, and .160 provides that chemical analyses of a person's breath shall be performed by an individual possessing a valid permit to perform such analyses issued by the Department of State Police. The only evidence I have in this hearing is that the only person issued such a permit in this case is Officer Powell. And [defense counsel], on behalf of the defendant, specifically asked Officer Powell to do this. I understand he declined because it wasn't part of their training or procedure. * * *

"* * * * *

"I'm going to grant the motion to suppress the breath test for this express reason, based on the record and based on my reading of the statute, that given [defense counsel]'s explicit request and explicit designation of Officer Powell, who is certified to operate this machine as the statute requires as the other qualified person under 813.150, and Officer Powell's declining to do that, that the test that was given must be suppressed."

On appeal, the state first argues that the record does not support the trial court's finding that defendant's counsel requested a second breath test. The state contends that, because neither counsel nor defendant ever asked for a second breath test, the premise for defendant's argument does not exist. At the hearing on defendant's motion, the following examination of Powell occurred:

"[Defense Counsel]: In the conversation that you and I had, I had instructed you that I wanted you to perform a

opportunity to have any licensed physician and surgeon, licensed professional nurse or qualified technician, chemist or other qualified person of the person's own choosing administer a chemical test or tests of the person's breath or blood for the purpose of determining the alcoholic content of the person's blood or a chemical test or tests of the person's blood or urine, or both, for the purpose of determining the presence of a controlled substance in the person. The failure or inability to obtain such a test or tests by a person shall not preclude the admission of evidence relating to a test or tests taken upon the request of a police officer."

second breath test and that we—[defendant]—would pay for it, right?

"[Officer Powell]: I don't recall you saying [defendant] but you said if—you put it to me as, if we paid for it, yes, I remember that.

"Q. And your response to the request to have—to my request that you perform a second breath test to [defendant] was, quote, I can't do that, closed quote.

"A. Closer quote was, 'You know I can't do that.'

"Q. 'You know I can't do that.' All right. And the reason that you thought that you couldn't give a second test was because of your training and the Oregon Administrative Rules, right?

"A. That's correct. That's the way I've been trained."

Powell's responses to defense counsel's questions could have been reasonably construed by the trial court as an acknowledgment that counsel had made a request for a second test over the telephone.[3] Based on the record before us, we hold that the trial court's finding that defendant requested a second test is supported by evidence in the record.

 The issue, then, is whether ORS 813.150 requires the police to perform a second Intoxilyzer test when asked. When interpreting a statute, our beginning point is the text and context of the statutory provision. We will only resort to the legislative history of a statute or other aids to statutory construction if the text and context of the statute are unclear. Here, the text of ORS 813.150 is clear; it only requires that defendant have a "reasonable opportunity" to procure a second test. The statute does not require any person specified by

---

[3] In addition, the trial court said to defense counsel:

"Your point, as I understand it, based on your record, is that you made a clear request on behalf of the defendant that a second test be administered, that you designated Officer Powell as the other qualified person of the person's own choosing and you assured him it would be paid for. Anything else I need to know[?]"

At that point, the prosecutor did not object to the trial court's findings and merely argued that the statute did not require that the police officer administer that test. The trial court could have reasonably inferred from the context of the colloquy that the state had acquiesced in the assertion that defense counsel had made a request for a second test.

the statute actually to *administer* a second chemical test, even when such a test has been requested by a defendant.

Moreover, when the statute is read in context with ORS 813.100, it is clear that the legislature knows how to write a statute to require the administration of chemical tests. ORS 813.100 provides, in part:

> "A test shall be *administered* upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 813.010." (Emphasis supplied.)

Thus, neither the text nor the context of ORS 813.150 supports defendant's argument.[4]

■ Defendant also argues that, because administrative rules govern the administration of Intoxilyzer tests, it is implicit from their text and context that the police are required to give a second test upon request to carry out the intent of the legislature that a defendant have the opportunity to obtain a second test. *See* ORS 813.160; OAR 257-30-080.[5] In *State v. Milstead,* 57 Or App 658, 646 P2d 63, *rev den* 293 Or 483 (1982), we held that, although the state was required to follow certain administrative rules in order for blood alcohol (or chemical) test results to be admissible *against* a defendant, those requirements are not imposed on a defendant when he or she seeks to introduce evidence of an

---

[4] Furthermore, our reading of ORS 813.150 is consistent with our prior interpretations of the statute. We have held that a defendant is denied a "reasonable opportunity" to obtain an independent test under ORS 813.150 when there has been some affirmative act on the part of the police that either prevents or hinders the attempt to obtain a test. *State v. Darlin,* 122 Or App 172, 177, 857 P2d 859 (1993); *see also State v. Miller* 41 Or App 687, 691, 598 P2d 1262 (1979) (holding that *former* ORS 487.810 was not violated when there was no affirmative conduct on the part of the police that denied the defendant a reasonable opportunity to obtain an independent blood alcohol test); *State v. Hilditch,* 36 Or App 435, 438, 584 P2d 376 (1978) (noting that once the police had undertaken to take the defendant to the hospital they had an obligation to wait a reasonable amount of time in order for the defendant to procure the funds to pay for the test). In this case, there was no affirmative conduct by Powell that prevented defendant from obtaining a second test.

[5] In substance, ORS 813.160 and OAR 257-30-080 provide a checklist for the performance of Intoxilyzer tests and require that in order for a breath test result to be admissible as evidence against a defendant, only a police officer may perform the test.

independent chemical test result. In other words, the statutes and administrative rules relied on by defendant do not govern chemical test results offered by defendants. Because the legislature did not intend to restrict the admissibility of chemical test evidence to tests conducted for defendants in accordance with the Oregon administrative rules, the absence of such a requirement is consistent with the text of ORS 813.150, which provides for only a "reasonable opportunity" for a second test.

Finally, defendant argues that the denial of a request to perform a second Intoxilyzer test violated his rights under Article I, section 11, of the Oregon Constitution[6] and the Fifth and Fourteenth Amendments of the United States Constitution.[7] In substance, he contends that ORS 813.150 does not provide for reciprocal discovery and that he was denied the right to present a complete defense. *See Wardius v. Oregon*, 412 US 470, 93 S Ct 2208, 37 L Ed 2d 82 (1973) (holding that a statute requiring the trial court to exclude the defendant's alibi witness because the defendant failed to file the required notice of the defense violated the federal Due Process Clause). He reasons that, because blood alcohol evidence dissipates quickly, there is a *per se* exigency that affords the right to obtain a second test immediately as part of a complete defense.[8]

---

[6] Article I, section 11, provides, in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor[.]"

[7] The Fifth Amendment provides, in part:

"[No person] shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law[.]"

The Fourteenth Amendment provides, in part:

"[No] State [shall] deprive any person of life, liberty, or property, without due process of law[.]"

[8] *See, e.g., People v. Superior Court (Scott)*, 112 Cal App 3d 602, 169 Cal Rptr 412 (1980) (holding that denial of request for blood test is a denial of due process because it prevents the defendant from obtaining evidence necessary to his defense); *Bilbrey v. State*, 531 So 2d 27, 29-30 (Ala Crim App 1987) (holding that due process requires that an accused be allowed a reasonable opportunity to obtain a timely, independent test).

■ Even if defendant's argument is legally cognizable, he was not denied the right to present a complete defense in this case. Defendant had the *opportunity* to have a second test administered because he was released from custody almost immediately after the first test was performed. Accordingly, defendant was not denied any right to obtain evidence.

Defendant's other arguments do not require discussion. The trial court erred when it granted defendant's motion to suppress.

Reversed and remanded.