[No. 21969-7-II.    Division Two.    January 8, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. LISA ANN
FARR-LENZINI, *Appellant*.

454

*Mark W. Muenster,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Kathleen A. Rukliss, Deputy,* for respondent.

SEINFELD, J. — Lisa Ann Farr-Lenzini appeals her conviction for attempting to elude a police officer, RCW 46.61.024. Because the officer's opinion testimony as to Farr-Lenzini's state of mind constituted harmful error, we reverse. We further hold that the traffic infraction of negligent driving in the second degree, RCW 46.61.525, is not a lesser included offense of reckless driving, RCW 46.61.500.

## Facts

Early on a September Sunday morning, a Washington State Patrol trooper and his trooper cadet passenger observed Farr-Lenzini drive her Ford Probe through the intersection of SR 503 and 199th Street in rural Clark County at what the trooper believed to be an excessive speed. The trooper followed in his marked patrol car, trying to overtake her. At that point, the trooper was about one thousand feet behind the Probe.

The weather conditions were clear and dry except for a patch of fog that both vehicles went through. When the trooper emerged from the fog, he saw that the Probe had passed another vehicle. He estimated that it was traveling over eighty miles per hour in a fifty mile per hour zone at that time. The trooper then activated his siren and overhead lights and continued his pursuit.

At one point, as the Probe slowed for a left turn onto 72nd Avenue, the trooper came within three or four hundred feet of it, but the gap widened as the Probe accelerated to over eighty miles per hour in a fifty mile zone. As the Probe sped along, the trooper saw three vehicles in the oncoming lane pull over. According to the trooper, before the Probe turned right onto 179th Street, its turn

signal flashed once and it braked "really hard." At that point, the trooper was approximately five hundred feet behind the Probe and trying hard to maintain the distance. Also at that point, according to the trooper, the Probe's driver was braking and accelerating "real hard" and appeared to be driving more "erratically." At one point on 179th Street, the trooper's speedometer exceeded one hundred miles per hour and he was still five hundred feet behind the Probe.

At the next intersection, 179th St. and 50th Avenue, the trooper saw the Probe's driver "hit the brakes real hard" before going through a stop sign and on to 50th Avenue. The trooper cadet estimated the Probe was going between thirty and forty miles per hour as it rounded the corner. And the trooper said that the Probe cut across oncoming lanes to get around the corner, and its rear-end "almost, sort of, slides to the right a little bit" as it rounded the corner. But when the trooper later checked the intersection for skid marks, he found none.

Farr-Lenzini testified at trial that she had tried to stop at the 179th and 50th intersection but "I must have been going faster that [sic] I realized and my brakes were slightly squishy, and I looked in both directions and in front of me and I didn't see anybody.[1] So I just chose to go ahead and make my turn."

As Farr-Lenzini braked for the intersection, the trooper's vehicle came within several hundred feet of her, but the trooper lost ground again as the Probe accelerated to an estimated seventy miles plus per hour in a forty mile zone.

At the next intersection, 50th Avenue and Salmon Creek Avenue, Farr-Lenzini stopped at the stop sign, saw the trooper coming up behind her, and pulled into a parking lot. She testified that this was the first time she saw the patrol car and that she had not heard the siren until then.

The trooper had traveled approximately four and a half

---

[1]Hard braking could result in a loss of braking power known as "brake fade." *Dunlop Co. v. Kelsey-Hayes Co.*, 484 F.2d 407, 410 (1973).

miles since activating his lights and sirens and the pursuit had lasted for approximately three and a half to four minutes. During this time, the trooper saw no pedestrians[2] or animals. Nor did he see any vehicles exiting driveways.

When the trooper stopped Farr-Lenzini, she was not intoxicated, she had a valid driver's license, her car contained no contraband, and the Probe was registered in her name. She was dressed in running clothes and said that she was on her way to meet a friend with whom she planned to go to Portland for a charity run.

The State charged Farr-Lenzini with one count of attempting to elude, RCW 46.61.024, or in the alternative, the lesser included offense of reckless driving, RCW 46.61.500.

At trial, over defense counsel's continuing objection, the State questioned the trooper as follows:

Q: Just based on your training and experience, do you have an opinion as to what the defendant's driving pattern exhibited to you?

A: It exhibited to me that the person driving that vehicle was attempting to get away from me and knew I was back there and refusing to stop.

An acoustical engineer testified as an expert on Farr-Lenzini's behalf. The engineer had tested the acoustical characteristics of the Probe. Based upon information he obtained from the siren manufacturer and the Washington State Patrol, along with other technical data, environmental factors, and the distances reported by the trooper, the engineer concluded that it was very probable that Farr-Lenzini could not hear the police sirens inside the Probe.

Farr-Lenzini admitted to going through the stop sign and speeding, but said she was largely unaware of her exact speed and did not think she went as fast as one hundred

---

[2]The trooper saw one pedestrian near the corner of SR 503 and 199th Street, before the trooper had activated his lights and siren, but the pedestrian was not in danger.

miles per hour. Farr-Lenzini said, "I was driving for the road conditions."

Farr-Lenzini took exception to jury instruction 11, which stated in part:

> A person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a reckless manner.
>
> This inference is not binding upon you, and it is for you to determine what weight, if any, such inference is to be given.

The trial court rejected Farr-Lenzini's proposed jury instruction on the lesser included offense of negligent driving in the second degree, reasoning that a traffic infraction was not a lesser included offense to a criminal charge.

In closing argument, defense counsel asked the jury to consider whether Farr-Lenzini is the type of "person who's going to go out and commit this crime[.]" In response, the State argued: "What is a profile of somebody eluding? You know, look at Ted Bundy, common experience. Look at things people like that—good looking guy, goes to UPS Law School; come to find out, he's a mass murderer." The trial court overruled Farr-Lenzini's prejudice objection.

The jury convicted Farr-Lenzini of attempting to elude and the trial court denied her motion for new trial. On appeal, she challenges: (1) the admission of the trooper's opinion testimony as to her state of mind; (2) the denial of her proposed negligent driving instruction; (3) the court's inference instruction; (4) the prosecutor's closing argument; and (5) the sufficiency of the evidence. She also argues that cumulative errors denied her a fair trial.

## I. Opinion Testimony

■ Farr-Lenzini argues that the trooper's opinion testimony as to her state of mind violated her constitutional right to a jury trial under the federal and state constitutions. Because it is the jury's responsibility to determine the defendant's guilt or innocence, no witness, lay or

expert, may opine as to the defendant's guilt, whether by direct statement or by inference. *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987); *State v. Garrison*, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967). Such an opinion would invade the jury's independent determination of the facts and violate the defendant's constitutional right. *State v. Carlin*, 40 Wn. App. 698, 701, 700 P.2d 323 (1985). Further, the closer the tie between an opinion and the ultimate issue of fact, the stronger the supporting factual basis must be. 1 McCormick on Evidence (John W. Strong ed., 4th ed. 1992).

■ The State argues that the court properly admitted the trooper's opinion under ER 704. ER 704 allows for the admission of an opinion or inference on an ultimate issue that the trier of fact must decide provided that the opinion or inference is otherwise admissible. *Seattle v. Heatley*, 70 Wn. App. 573, 578-79, 854 P.2d 658 (1993). To be otherwise admissible, opinion evidence must also satisfy ER 403, ER 701, and ER 702. *Heatley*, 70 Wn. App. at 579. Here, we find the trooper's opinion was inadmissible under ER 702 and ER 701.

■ The court did not state whether it was admitting the trooper's challenged opinion as expert or as lay testimony. "Expert testimony on scientific, technical or specialized knowledge is admissible under ER 702 if it will assist the trier of fact understand the evidence or a fact in issue."[3] *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 734-35, 959 P.2d 1158 (1998) (citing *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 102, 882 P.2d 703, 891 P.2d 718 (1994)). ER 702 requires us to make two inquiries: "(i) does the proffered witness qualify as an expert; and (ii) would the proposed testimony be helpful to the trier of fact." *State v. Greene*, 92 Wn. App. 80, 96, 960 P.2d 980 (1998); *State v. Janes*, 121 Wn.2d 220, 235-36, 850 P.2d 495, 22 A.L.R.5th 921 (1993).

---

[3]ER 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

"Practical experience is sufficient to qualify a witness as an expert." *State v. Ortiz*, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992). The trooper here had nearly twenty years experience, was a vehicle instructor trained in accident investigation, and had participated in fifty to eighty arrests for attempting to elude. Thus, he certainly qualified as an expert for purposes of police procedures, speed, vehicle dynamics, and accident reconstruction.

■ But the expert testimony of an otherwise qualified witness is not admissible if the issue at hand lies outside the witness' area of expertise. *Queen City Farms*, 126 Wn.2d at 103-04. Thus, in *Queen City*, the Supreme Court found the witness' testimony to be "conjecture and speculation." *Queen City Farms*, 126 Wn.2d at 104.

The record here does not indicate that the trooper was qualified to testify as an expert on the driver's state of mind. There is no evidence that he had the specialized training or experience necessary to recognize the difference between a distracted speeding driver and an eluding driver. Assuming there is a profile of an eluding driver and that it would be admissible, it was not mentioned here. Consequently, we find there was an insufficient foundation to qualify the trooper as an expert for purposes of expressing an opinion as to Farr-Lenzini's state of mind. *Queen City Farms*, 126 Wn.2d at 104. An opinion that lacks a proper foundation is not admissible under ER 702. *Heatley*, 70 Wn. App. at 579.

■ Nor did the trooper's opinion satisfy the other requirement of ER 702, that it be helpful to the jury. *See State v. Ellis*, 136 Wn.2d 498, 533, 963 P.2d 843 (1998) (Talmadge J. dissenting). "Generally, expert evidence is helpful and appropriate when the testimony concerns matters beyond the common knowledge of the average layperson, and does not mislead the jury to the prejudice of the opposing party." *State v. Jones*, 59 Wn. App. 744, 750, 801 P.2d 263 (1990) (citing *State v. Cunningham*, 23 Wn. App. 826, 854, 598 P.2d 756 (1979), *rev'd on other grounds*, 93 Wn.2d 823, 613 P.2d 1139 (1980)). Thus, opinion testimony

explaining complex or arcane medical, psychological or technical evidence may help the jury. *See, e.g., State v. Avendano-Lopez,* 79 Wn. App. 706, 711, 904 P.2d 324 (1995); *Jones,* 59 Wn. App. at 750-51; *State v. Madison,* 53 Wn. App. 754, 764-65, 770 P.2d 662 (1989). But a lay jury, relying upon its common experience and without the aid of an expert, is capable of deciding whether a driver was attempting to elude. *See, e.g., Hiner,* 91 Wn. App. at 735-36. Thus, the trooper's testimony was not properly admissible under ER 702.

Further, the trooper's opinion was not admissible lay testimony under ER 701. A lay witness may give only "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." ER 701; *State v. Lewellyn,* 78 Wn. App. 788, 794, 895 P.2d 418 (1995); *State v. Kinard,* 39 Wn. App. 871, 874, 696 P.2d 603 (1985).

Courts have upheld the admission of the following lay opinions: speed of a vehicle, *Kinard,* 39 Wn. App. at 874; degree of sobriety in a driving while intoxicated case, *Lewellyn,* 78 Wn. App. at 794-95; the value of one's own property, *Kinard,* 39 Wn. App. at 874; and the identification of a person from a videotape, *State v. Hardy,* 76 Wn. App. 188, 190, 884 P.2d 8 (1994), *aff'd,* 129 Wn.2d 211, 916 P.2d 384 (1996); *Kinard,* 39 Wn. App. at 874.

But courts have held the admission of other lay opinions to be improper, such as a person's mental capacity to enter into a lease, *Carr v. Deking,* 52 Wn. App. 880, 885-86, 765 P.2d 40 (1988); and a jail nurse's opinion as to a defendant's "diminished capacity" where the nurse lacked personal knowledge as to whether the defendant was on drugs at the time of the crime, *State v. Thamert,* 45 Wn. App. 143, 148-49, 723 P.2d 1204 (1986).

The above authorities suggest that when analyzing the admissibility of lay opinion testimony, we first determine whether the opinion relates to a core element or to a peripheral issue. Where the opinion relates to a core ele-

ment that the State must prove, there must be a substantial factual basis supporting the opinion. Courts also consider whether there is a rational alternative answer to the question addressed by the witness's opinion. In that circumstance, a lay opinion poses an even greater potential for prejudice. *Carr*, 52 Wn. App. at 886.

For example, *Lewellyn*, *Hardy*, *Carr*, and *Thamert* all dealt with core issues. In *Lewellyn* and *Hardy*, cases upholding the admission of opinion evidence, the witnesses had strong factual bases supporting their opinions. In *Lewellyn*, the opinion of the driver's sobriety was based upon the arresting officers' observations of erratic driving, the smell of intoxicants, slurred speech, and the defendant's lack of dexterity and inability to perform field sobriety tests. 78 Wn. App. at 792. In *Hardy*, the witness, who identified the defendant from a videotape, had known the defendant for a number of years. 76 Wn. App. at 191.

Conversely, *Carr* and *Thamert* both involved opinion evidence about the defendants' states of mind and, in both cases, the reviewing court held the opinion testimony not admissible. In *Carr*, the witness observed that the person at issue was confused as to the transaction and that his mental capacity had diminished. 52 Wn. App. at 886. But the *Carr* court noted that there was a rational alternative explanation—the defendant simply might have changed his mind about the lease. 52 Wn. App. at 886. And in *Thamert*, the jail nurse did not know if the defendant was on drugs at the time of the crime. 45 Wn. App. at 149.

Here, Farr-Lenzini's state of mind was a core issue because the crime of attempting to elude has an element of willfulness. RCW 46.61.024. And the trooper's opinion spoke directly to that issue: "the person driving that vehicle was attempting to get away from me and knew I was back there and [was] refusing to stop."

The factual basis supporting this opinion was the trooper's observation of Farr-Lenzini (1) hitting the brakes as she entered the 72nd Avenue-179th Street intersection and as she went through the 179th Street-50th Avenue

stop sign; (2) accelerating "extremely hard" as she came out of her turn; and (3) swiveling her head rapidly side to side three times as she checked the intersection of 50th Avenue and Salmon Street. These limited facts provide slim support for the trooper's opinion as to what the driver was thinking during the high speed, four-and-a-half minute pursuit. She simply may have been so absorbed in driving her high performance car on a quiet, dry Sunday morning that she was oblivious to her speed and to any vehicles following behind her. As the cadet trooper stated at pretrial, Farr-Lenzini was a "good" "aggressive" driver. And uncontroverted expert testimony indicated that the car's interior noise probably blotted out the patrol car's siren.

The State also argues that the trooper's testimony was not an opinion of Farr-Lenzini's state of mind, but was merely an "impression" of her behavior. But this is inconsistent with the words used in the question and answer. The prosecutor asked for an "opinion." The trooper responded that the driver "knew I was back there and [was] refusing to stop." Further, a police officer's impression of a defendant's conduct can constitute an improper opinion as to the defendant's guilt or innocence. *See State v. Sargent*, 40 Wn. App. 340, 698 P.2d 598 (1985). Here, the opinion or impression addressed the major contested issue at trial, whether Farr-Lenzini was willfully eluding the trooper.

The State, citing *Madison*, 53 Wn. App. 754, further suggests that the trooper did not give an opinion as to Farr-Lenzinni's state of mind. It contends that he merely testified that Farr-Lenzini's driving behavior was typical of someone eluding the police.

*Madison* is distinguishable. The expert in *Madison* described the characteristic behavior of a sexual abuse victim, 53 Wn. App. at 760, behavior less likely to be within the common knowledge of jurors than the illegal driving behavior at issue here. Further, the trooper here did not discuss common characteristics. He described only the defendant's acts and then interpreted them.

Because the trooper testified to Farr-Lenzini's guilt without providing an adequate factual basis, we conclude that the admission of this evidence was error. The State argues that if this was error, it was harmless.

We use two tests to determine whether constitutional error is harmless: the "contribution test" and the "overwhelming evidence test." *See State v. Johnson*, 100 Wn.2d 607, 621, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985). Under the contribution test, error is harmless if it can be said beyond a reasonable doubt that it did not contribute to the verdict. *Johnson*, 100 Wn.2d at 621. Under the overwhelming evidence test, constitutional error is harmless if it can be said beyond a reasonable doubt that the untainted evidence necessarily leads to a finding of guilt. *Johnson*, 100 Wn.2d at 621.

The error here was not harmless under either test. Because the trooper's testimony addressed the critical core issue as well as Farr-Lenzini's credibility, we cannot say without a reasonable doubt that it did not contribute to the verdict. "Particularly where such an opinion is expressed by a government official, such as a sheriff or a police officer, the opinion may influence the factfinder and thereby deny the defendant of a fair and impartial trial." *State v. Carlin*, 40 Wn. App. 698, 703, 700 P.2d 323 (1985); *State v. Haga*, 8 Wn. App. 481, 492, 507 P.2d 159 (1973).

And the untainted evidence was not so overwhelming as to necessarily lead to a guilty verdict on the charge of attempting to elude. The evidence of Farr-Lenzini's state of mind rested almost entirely upon the trooper's limited observations.[4] Contrary evidence showed that Farr-Lenzini stopped for other stop signs, reduced her speed once she turned onto 50th Avenue, and could not hear the trooper's

---

[4]The State's brief mischaracterizes the evidence of Farr-Lenzini's driving. It states that both troopers testified that the Probe "slid sideways due to the speed that she took the corner." But the trooper cadet did not mention the car sliding sideways, and the trooper merely testified that it "almost, sort of, slides to the right a little bit."

siren. Consequently, we find that the error was not harmless.

Although we reverse on the basis of improper opinion testimony, we discuss the following issues that may appear again at retrial.

## II. Negligent Driving

Farr-Lenzini challenges the trial court refusal to give her negligent driving instruction. The trial court concluded that negligent driving in the second degree is not a lesser included offense of reckless driving.

▆ A defendant is entitled to an instruction on the elements of a lesser included offense when (1) each of the elements of the lesser offense is a necessary element of the charged offense, and (2) the evidence supports an inference that the lesser crime was committed. *State v. Aumick*, 126 Wn.2d 422, 426, 894 P.2d 1325 (1995). At issue here is the first prong, specifically whether second degree negligent driving, which the Legislature recategorized as a driving infraction, not a crime, can be a lesser offense to a crime. We conclude that it cannot.

We interpret statutes to ascertain and carry out the intent of the Legislature. *State v. Riles*, 135 Wn.2d 326, 340, 957 P.2d 655 (1998); *Washington Pub. Employees Ass'n v. Washington Personnel Resources Bd.*, 91 Wn. App. 640, 652, 959 P.2d 143 (1998). We read related statutes in relation with each other to harmonize and give effect to each provision. *Fray v. Spokane County*, 134 Wn.2d 637, 649, 952 P.2d 601 (1998). Absent ambiguity, we derive a statute's meaning from the wording of the statute itself without resorting to judicial construction or interpretation. *Fray*, 134 Wn.2d at 649.

A former statute defined negligent driving as a misdemeanor and as a lesser included offense of reckless driving. Former RCW 46.61.525, LAWS OF 1979, 1st Ex. Sess., ch.

136, § 86.[5] But in 1996, the Legislature amended the statute by: (1) removing the provision describing negligent driving as a lesser included offense of reckless driving; (2) dividing negligent driving into two offenses—negligent driving in the first degree and negligent driving in the second degree; and (3) downgrading negligent driving in the second degree to a traffic infraction. LAWS OF 1996, ch. 307, § 1. And a year later, the Legislature deleted first degree negligent driving from RCW 46.61.525 and inserted it under RCW 46.61.5249. LAWS OF 1997, ch. 66, §§ 4, 5. Thus, RCW 46.61.525 now relates only to negligent driving in the second degree, a traffic infraction subject to a $250 fine.

RCW 46.63 governs the disposition of traffic infractions. The purpose behind the enactment of RCW 46.63 was to decriminalize certain traffic offenses "to promote the public safety and welfare on public highways and to facilitate the implementation of a uniform and expeditious system for the disposition of traffic infractions." RCW 46.63.010.

■■ A person cited for an infraction can respond in a number of ways, such as by paying a penalty or requesting a contested hearing. RCW 46.63.070. There is no right to a jury at a contested traffic infraction hearing. RCW 46.63.090(1). And the State's burden of proof is only a preponderance of the evidence. RCW 46.63.090(3). Thus, the Legislature clearly removed this offense from the arena of criminal litigation and procedure. To instruct the jury to consider it as a lesser included offense of the criminal offense of reckless driving would be contrary to this clear legislative intent.

We note that Oregon courts, addressing very similar statutes, have reached the same result. *See State v. Darlin*, 122 Or. App. 172, 857 P.2d 859 (1993); *State v. Mink*, 30 Or. App. 339, 567 P.2d 1033 (1977). The Oregon statute (ORS) also provides for nonjury hearings and proof by a prepon-

---

[5]Division One of this court recently held that former RCW 46.61.525 is a lesser included offense of vehicular assault. *State v. Gostol*, 92 Wn. App. 832, 836, 965 P.2d 1121 (1998).

derance of the evidence. ORS 153.575. Our Oregon colleagues reasoned that because of the different procedures and standards of proof, it was "unworkable" to consider a traffic infraction as a lesser-included offense of a traffic crime. *Darlin*, 857 P.2d at 863; *Mink*, 567 P.2d at 1036.

For the same reasons as relied upon by the courts in *Darlin* and *Mink*, we hold that the trial court cannot instruct the jury that negligent driving in the second degree is a lesser included offense of reckless driving.[6] Consequently, the trial court did not err in rejecting the proposed negligent driving instruction.

### III. Inference Instruction

Farr-Lenzini argues that instruction 11 allowed the jury to find recklessness solely from proof of excess speed and that this denied her constitutional due process. The State contends that there was sufficient evidence other than speed to allow the jury to find Farr-Lenzini guilty without relying solely upon the inference instruction.

Instruction 11 states:

> A person who drives in excess of the maximum lawful speed at the point of operation may be inferred to have driven in a reckless manner.

> This inference is not binding upon you, and it is for you to determine what weight, if any, such inference is to be given.

A permissive inference instruction is unconstitutional "unless it can be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *County Court v. Allen*, 442 U.S. 140, 166 n.28, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979) (quoting *Leary v. United States*, 395 U.S. 6, 36, 89 S. Ct. 1532, 23 L. Ed. 2d 57 (1969)); *State v.*

---

[6]We do not discuss whether the trial court can determine from the bench whether Farr-Lenzini has committed negligent driving in the second degree. Such a procedure is permissible in Oregon. *Darlin*, 857 P.2d at 863; *Mink*, 567 P.2d at 1036.

*Randhawa*, 133 Wn.2d 67, 75, 941 P.2d 661 (1997).[7] Washington case law directs us to assess the constitutionality of an inference instruction in light of the particular facts of the case and the State's evidence supporting the inference. *Randhawa*, 133 Wn.2d at 76; *State v. Hanna*, 123 Wn.2d 704, 712, 871 P.2d 135 (1994).[8]

In examining whether the presumed fact or elemental fact, reckless driving, more likely than not flowed from the proven or foundational fact, speed, we consider the State's evidence of Farr-Lenzini's speed. *Randhawa*, 133 Wn.2d at 77-78. The State showed that the Probe exceeded the speed limit by up to thirty to forty miles per hour and may have momentarily traveled at twice the speed limit. This is considerably faster than the ten to twenty miles per hour the *Randhawa* court found insufficient to support an inference instruction. 133 Wn.2d at 77-78. Further, the trooper testified that Farr-Lenzini was driving "erratically," she ran a

---

[7]The standard of proof required for an inference instruction is still somewhat unsettled in Washington. "When an inference is only part of the prosecution's proof supporting an element of the crime, due process requires the presumed fact to flow 'more likely than not' from proof of the basic fact." *State v. Hanna*, 123 Wn.2d 704, 710, 871 P.2d 135 (1994) (citing *Allen*, 442 U.S. at 165); *accord Randhawa*, 133 Wn.2d at 76.

*Allen* also suggests that when the inference is the prosecution's "sole and sufficient" proof supporting an element of a crime, a reasonable doubt standard applies to show that the presumed fact flows from the basic fact. 442 U.S. at 167; *State v. Brunson*, 128 Wn.2d 98, 107, 905 P.2d 346 (1995); *State v. Delmarter*, 68 Wn. App. 770, 784-85, 845 P.2d 1340 (1993). But the Washington State Supreme Court has yet to apply the reasonable doubt standard to inference instructions. *See Brunson*, 128 Wn.2d at 109; *Hanna*, 123 Wn.2d at 711; *but see Delmarter*, 68 Wn. App. at 784-85.

[8]Despite the inability of a reviewing court to know what evidence a jury relied upon in reaching a verdict, the rule set forth in *Hanna* and its progeny emphasizes the sufficiency of the evidence supporting the inference rather than focusing on the language of the instructions and the effect they may have had on the jury. *See Hanna*, 123 Wn.2d at 719 (Johnson, J., dissenting). *Randhawa* apparently recognized this problem when it noted that an inference instruction poses a very real danger of inviting the jury to infer reckless driving solely on the basis of speed. 133 Wn.2d at 77-78.

The Ninth Circuit rejected this reliance upon speed alone, after stating: "The jury was told, in effect, that it could ignore all the other evidence, consider only the evidence of Schwendeman's speed, and if it found Schwendeman was exceeding the speed limit, that was enough to convict him—not of speeding, but of reckless driving." *Schwendeman v. Wallenstein*, 971 F.2d 313, 316 (9th Cir. 1992); *see also Hanna v. Riveland*, 87 F.3d 1034 (9th Cir. 1996).

four-way stop, and she had to cut across lanes to negotiate a corner.

Given this evidence, one can say with "substantial assurance" that the presumed fact of Farr-Lenzini's reckless driving more likely than not flowed from the proven fact of her speed. Thus, it was not error to give the inference instruction. But we caution the trial court to use particular care in examining the evidence before giving an inference instruction and to instruct the jury to consider all evidence in addition to any evidence directly supporting the inferred fact.

### IV. Prosecutorial Misconduct

Farr-Lenzini further argues that the State's Ted Bundy comments prejudiced the jury and denied her a fair trial. Because the argument could reoccur on remand, we discuss it here.

██ ██ "Prosecutorial misconduct may deprive the defendant of a fair trial and only a fair trial is a constitutional trial." *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). If we find misconduct, we determine whether it prejudiced the jury thereby denying the defendant a fair trial guaranteed by the due process clause. *Davenport*, 100 Wn.2d at 762. We review allegedly improper arguments in the context of the total argument, the issues, the evidence, and the jury instructions. *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994).

██ ██ The State contends that defense counsel invited the Ted Bundy remarks by arguing that Farr-Lenzini did not fit the profile of a person who would elude the police. Invited arguments are not grounds for reversal unless they are not a pertinent reply or are so prejudicial as to render a curative instruction ineffective. *Russell*, 125 Wn.2d at 86. Viewing the Ted Bundy statement in context, we find no prejudice.

Before closing argument, the trial court advised the jury that the attorneys' arguments are not evidence and to

"[d]isregard any remark, statement or argument that is not supported by the evidence or the law as stated by the court." Afterward, defense counsel argued:

I simply submit to you that a 36-year-old woman doesn't decide—moment—on an instant's notice that she's going to risk everything that she's accomplished up to that point and just take off from the police. It's just not going to happen.

She doesn't fit the profile.

In rebuttal the State argued, "I mean the State is not saying Mrs. Lenzini is a bad person." And then the State added the Ted Bundy analogy.

Farr-Lenzini objected, to which the State replied:

Basically, what we're saying here is the State is not saying this person fits a typical profile. What we're saying is based on the evidence on September 8, the defendant made a bad judgment call. She made a mistake and she changed her driving pattern and she drove recklessly and she tried to widen the gap. She was scared and she ran. And that's all we're saying. We're not saying she's a bad person.

Although a curative instruction would have been desirable, the court had already instructed the jury that argument is not evidence and to disregard statements not supported by evidence. "Juries are presumed to heed the court's instructions." *Hanna*, 123 Wn.2d at 711; *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991). Further, the jury was aware that Farr-Lenzini was not accused of a violent offense. Thus, viewed in context, a reasonable jury would see the Ted Bundy remark as a rhetorical overreaction to a defense argument. Consequently, the argument did not deny Farr-Lenzini a fair trial.

Having found that the trooper's opinion testimony constituted reversible error, we need not discuss Farr-Lenzini's remaining claims of insufficient evidence and cumulative error.

Accordingly, we reverse and remand.

HOUGHTON, C.J., and MORGAN, J., concur.