# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48873-6-II |
| Respondent, | |
| v. | |
| CARLOS AVALOS, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Carlos Avalos appeals his jury trial conviction of first degree assault.  He argues that he was denied a fair trial when one of the State's witnesses expressed his opinion that Avalos acted with intent to inflict great bodily harm.  Avalos further argues that we can consider this issue for the first time on appeal because it is a manifest constitutional issue and that his trial counsel provided ineffective assistance of counsel by failing to object to this testimony.[1]  Because Avalos failed to object to the challenged testimony and fails to show that this testimony was a manifest constitutional error or prejudicial, we affirm.

---

[1] Avalos also requests that we decline to impose appellate costs.  Under RAP 14.2, a commissioner of this court will consider whether to award appellate costs if the State files a cost bill and the defendant objects to it.

FACTS

On September 28, 2015, Avalos was transported from the Washington Corrections Center (WCC) to the superior court for a change of plea hearing on a charge for assault of a corrections officer. Before being transported, he was strip searched and an "electronic immobilization device" referred to as a Band-It and other restraints were placed on his body. Report of Proceedings (RP) at 45. Despite having been searched, Avalos managed to conceal a homemade weapon referred to as a "shank." *See* RP at 49, 185. Avalos had previously made the shank by sharpening a piece of metal that he had removed from a computer keyboard.

While being transported back from the court, Avalos removed the Band-It. Upon arriving at the WCC, Avalos attacked Corrections Officer Squire and stabbed him in the face with the shank. As other corrections officers attempted to restrain Avalos, Avalos continued to attempt to strike Officer Squire with the weapon.

Officer Squire suffered a puncture approximately one-half inch below his eye. The wound did not require stitches. The doctor who treated Officer Squire later testified that if the injury had been slightly higher it "would have most likely been very devastating to the eye" and could have caused blindness. RP at 107.

## II. PROCEDURE

The State charged Avalos with first degree assault and second degree assault. The case proceeded to a jury trial.

No. 48873-6-II

A. STATE'S WITNESSES

At trial, the State's witnesses testified as described above. In addition, Steven DeMars, the chief investigator at the WCC, also testified for the State. DeMars identified various exhibits and testified about the location of the transport van at the time of the assault and the security process used when transporting prisoners.

When the State asked DeMars to testify about "shank[s]," the following testimony occurred:

> Q [State]    Okay. And what are the concerns about shanks in a correctional setting?
>
> A [DeMars]    *Shanks are obviously intended to inflict great bodily harm. They are made to intimidate, and to assault, and to—to harm a person for whatever their intent is.* So staff have concerns about that all the time. We don't wear vests, and so that is our greatest concern. When we do transports, we do wear vests. But clearly we're not expecting to be stabbed or—
>
> Q    Okay. So you said that corrections officers rely on their—their authority to maintain—to keep the peace.
>
> A    Verbal tacticals, and authority with the uniform, and absolutely.
>
> Q    Okay. And this authority, does it work when a person has a shank and attacks an officer out of nowhere?
>
> A    No.
>
> Q    Why is that?
>
> A    *Because the—the—clearly their intent is to harm.* And—and the authority, the—the law doesn't matter at that point. *Their—their intent is to do whatever damage and harm to that person.*
>
> Q    What about, you said voice. How does—how does voice fit into this?
>
> A    Verbal tactical skills. We're trained to de-escalate, to communicate with—with folks, to not have to rise to a level of violence, if at all possible.
>
> Q    Okay. So I take it then that you're saying that corrections officers are somewhat vulnerable if there's a surprise attack?
>
> A    Correct.

RP at 49-51 (emphasis added). Defense counsel did not object to this testimony.

B.  DEFENSE WITNESS

Avalos was the only defense witness.  Avalos admitted to making and concealing the shank, to removing the Band-It, and to assaulting Officer Squire with the shank.

But Avalos denied intending to inflict "serious bodily injury" or intentionally striking Officer Squire in the face.  RP at 187-88.  Avalos asserted that his only objective was to obtain a transfer to another facility closer to his family.  He admitted, however, that he had obtained transfers in the past by assaulting officers and that he used a weapon because an assault with a weapon would be taken more seriously and was more likely to lead to a transfer.  Avalos also testified that although he had once succeeded in obtaining a transfer after he stabbed a corrections officer several times in the neck, he did not think that he was more likely to be transferred if he seriously injured Officer Squire and "just any assault" would be sufficient.  RP at 194.

In closing argument, the State did not refer to DeMars's testimony that shanks are intended to inflict great bodily harm.  Instead, the State argued that Avalos's creation of and use of the shank, in combination with his planning the attack at a time he knew Officer Squire would be vulnerable and the fact Avalos stabbed the officer in the face demonstrated an intent to inflict great bodily harm.  The State also argued that Avalos's need to seriously injure an officer to obtain a transfer demonstrated an intent to inflict great bodily harm.

The jury found Avalos guilty of second degree assault and first degree assault.  The trial court merged the second degree assault conviction with the first degree assault conviction.  Avalos appeals his first degree assault conviction.

ANALYSIS

I. OPINION TESTIMONY ARGUMENT NOT PRESERVED

Avalos argues that he was denied his constitutional right to a fair trial because DeMars's testimony expressed his opinion that Avalos[2] acted with intent to inflict great bodily harm.[3] Avalos further contends that he may raise this issue for the first time on appeal because it is a manifest constitutional error.

We first address the threshold issue of whether Avalos may raise the alleged improper opinion testimony issue for the first time on appeal under RAP 2.5. We hold that Avalos has failed to preserve this issue for review.

To raise an error for the first time on appeal, the appellant must demonstrate that the error was "manifest" and truly of constitutional dimension by identifying the constitutional error and showing how the alleged error actually affected his rights at trial. RAP 2.5(a)(3); *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). Impermissible opinion testimony regarding a defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. *Kirkman*, 159 Wn.2d at 927. But Avalos fails to show that the error he alleges actually affected his rights at trial.

---

[2] We note that appellant misquotes DeMars's testimony on page 6 of his opening brief. DeMars did not testify that *Avalos* obviously intended to inflict great bodily harm; instead DeMars testified that "[s]hanks are obviously intended to inflict treat bodily harm." RP at 50.

[3] To find Avalos guilty of first degree assault, the jury had to find, among other elements, that he had acted "with intent to inflict great bodily harm." RCW 9A.36.011(1).

*State v. Montgomery*, 163 Wn.2d 577, 183 P.3d 267 (2008), is instructive. In *Montgomery*, a case involving a charge of possession of pseudoephedrine with intent to manufacture methamphetamine, a detective and a forensic scientist testified that the defendant had made purchases of various items with intent to manufacture methamphetamine. *Montgomery*, 163 Wn.2d at 587-89. Our Supreme Court held that the detectives' and forensic scientist's testimony concluding that the defendant had intended to manufacture methamphetamine were improper direct comments on a disputed element of the charged offense. *Montgomery*, 163 Wn.2d at 595-96. But the court further held that the improper testimony was not a manifest constitutional error because the jury had been properly instructed that the jurors were the sole judges of credibility and were not bound by expert witness opinions, and there was nothing demonstrating that the jury had failed to follow these instructions. *Montgomery*, 163 Wn.2d at 595-96.

Here, as in *Montgomery*, the jurors were instructed that they were "the sole judges of the value or weight to be given to the testimony of each witness," and that they were not "required to accept" the opinion testimony presented by witnesses with special training, education, or experience. Clerk's Papers at 27, 32 (Jury Instructions 1 & 32). And, as in *Montgomery*, there is no indication in the record demonstrating that the jury failed to follow these instructions. Additionally, the testimony at issue here was less likely to have influenced the jury than the testimony in *Montgomery*. DeMars's testimony was general testimony about shanks and their purpose and was not specific to Avalos. At best it inferred that Avalos acted with the requisite intent whereas the witnesses in *Montgomery* expressly opined that the defendant had formed the requisite intent. Thus, under *Montgomery*, even presuming that DeMars's testimony was improper

opinion testimony, Avalos has not shown that the potential error was sufficiently prejudicial to qualify as a manifest error. Accordingly, we decline to address this issue further.[4]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Avalos further argues that his trial counsel provided ineffective assistance of counsel by failing to object to DeMars's improper opinion testimony. We disagree.

To establish ineffective assistance of counsel, Avalos must show both (1) deficient performance and (2) resulting prejudice. *State v. Lozano*, 189 Wn. App. 117, 125, 356 P.3d 219 (2015) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)), *review denied*, 184 Wn.2d 1032 (2016). "Failure to establish either prong is fatal to an ineffective assistance of counsel claim." *Lozano*, 109 Wn.2d at 125 (citing *Strickland v. Washington*, 466 U.S. 668, 700, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). As discussed above, Avalos does not establish prejudice. Accordingly, Avalos's ineffective assistance of counsel claim fails.

---

[4] Avalos also relies on *State v. Farr-Lenzini*, 93 Wn. App. 453, 970 P.2d 313 (1999). *Farr-Lenzini* addressed the admission of opinion testimony, not whether an appellant can raise an unpreserved claim that a witness improperly gave opinion of guilt testimony. Thus, we rely on *Montgomery* rather than *Farr-Lenzini* to support our analysis.

Avalos also relies on *State v. Barr*, 123 Wn. App. 373, 98 P.3d 518 (2004), to support his argument that the error here was a manifest constitutional error. But *Barr* is a Court of Appeals case decided before *Montgomery* was decided by our Supreme Court, and Avalos does not explain why we should reject *Montgomery* and continue to apply *Barr*. Because *Montgomery* is a more recent case and we are required to follow our Supreme Court's precedent, we rely on *Montgomery* rather than *Barr* in our analysis.

No. 48873-6-II

Because Avalos failed to object to the challenged testimony and fails to show that this testimony was a manifest constitutional error or prejudicial, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.

8