# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JASON SAUNDERS, a single individual,<br><br>        Respondent,<br><br>        v.<br><br>CARLA THORE and JOHN DOE THORE, wife and husband and the marital community comprised thereof,<br><br>        Appellants. | No. 77826-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: June 17, 2019 |

APPELWICK, C.J. — Thore hit a vehicle in which Saunders was a passenger, injuring Saunders. Saunders sued Thore to recover for damages. Thore argues that the trial court abused its discretion in finding that Saunders's preexisting medical condition was asymptomatic prior to the car accident and excluding her expert from testifying otherwise. She further contends that the trial court erred in entering a directed verdict on a portion of Saunders's medical bills. Finally, she asserts that the trial court abused its discretion in excluding photographs, repair estimates, and Thore's testimony regarding the force of the impact of the car accident. We affirm.

## FACTS

On the morning of June 12, 2013 around 7:30 a.m., Jason Saunders was a passenger in a Mazda Miata traveling on Northeast Woodinville-Duvall Road. As the Miata approached the 160th Avenue Northeast intersection, Carla Thore,

driving a Toyota FJ Cruiser, pulled out from a stop sign and hit the Miata as she attempted to turn left. On April 20, 2016, Saunders sued Thore to recover for damages as a result of his injuries from the accident.

Before trial, Saunders moved to prohibit Thore from (1) testifying about the force of the impact of the accident, and (2) presenting photographs of the damage to both parties' cars, and providing repair estimates for their vehicles. Thore opposed both motions. The court granted the motion to exclude repair estimates and testimony about the property damage. It reserved ruling on excluding the photographs and Thore's testimony on the force of the impact. The trial court later brought up the motion as to the photographs. After both parties argued, the trial court stated,

> [T]here is just not a basis in this trial -- and, frankly, there is not a scientific basis period -- for an argument that the testimony of a layperson about the force of an accident can predict or somehow give any admissible evidence about the impact on a human body. . . .
>
> So for all of those reasons, and because your clients [sic] have admitted liability, her testimony is largely irrelevant. I'm not really sure -- I'll let you proffer her testimony before she testifies. The pictures are of out of the damage because they are not relevant for any particular issue in this case. . . .
>
> But the reality is some accidents that have incredible force result in mild injuries, and some of mild force can cause serious injuries. They often don't, but that's really up to the medical doctors to give that opinion.

And, as to Thore's testimony, the court subsequently ruled,

> The only thing she can say is that she was involved in a car accident where she struck another car. That's it. That's the full extent of it. And then if she wants to accept responsibility for it, that's fine, but she can't testify to the circumstances of the car accident. . . . The problem is . . . the jury is going to try and predict the forces on a

human body based on the striking of two vehicles. And, again, there is no scientific basis for that, period.

Saunders also moved to prohibit Thore from arguing or presenting evidence that he had preexisting medical conditions. Saunders acknowledged that he had "preexisting (asymptomatic) Grade One L5/S1 spondylolisthesis" and that he was involved in a car accident in 2011 in which he suffered a brain hemorrhage and fractures to his pelvis, nose, right humerus, and right femur. He argued, however, that his preexisting conditions were dormant and asymptomatic immediately before the accident, and therefore not a proximate cause of resulting damages.

Thore planned to have her expert, Dr. James Russo, testify that Saunders's condition was symptomatic before the accident. In his pretrial motion, Saunders asserted that Dr. Russo's opinion was baseless and refuted by his own treating physician, Dr. Sandra Demars. Saunders argued that before the accident he did not have posterior pain, and after his accident he had spinal surgery to address posterior pain. Saunders relied on Dr. Demars's declaration, in which she wrote, "I can say unequivocally that the hip/leg pains he was experiencing in late 2012 and early 2013 were anterior (front side) pains."

Thore argued to the court that Demars's declaration was "very suspect and was not subject to any kind of cross-examination." She continued,

> [T]here are a number of factors that suggest that the pain was posterior and not anterior. One is the fact that it was absolutely unequivocally nerve pain. It's not only charted as nerve pain, but it's treated as nerve pain, for which gabapentin, a nerve pain -- a prescription medication designed to addressed [sic] nerve pain, was prescribed. So we know he had nerve pain. If he had nerve pain, it's coming from his back.

3

The other issue is that he complained of other nerve-related symptoms such as numbness, weakness, and tingling. He complained of that to Dr. [Demars] specifically. So we're not talking about necessarily what -- the way he's trying to explain it away as, "Gee, I had pain in the front of my leg that was due to a surgery I had prior." And we know that's not true because of all of this evidence related to nerve pain. Now, if he's having nerve pain, that means it's not related to the leg surgery; it's related to his spine. And that suggests that the pain was, in fact, posterior and not anterior.

The court stated,

I think the question is whether you have a good faith basis for having an expert proffer an opinion that the treating doctor, who is the only person who could deal with that issue at the time, testifies to the contrary. . . .

So the issue about whether or not you had a chance to talk to Dr. [Demars], frankly, that's a target gone by. That's something that would have been validly raised before the trial as a discovery issue. And I've had the case for a little bit of time, not a lot of time, but I could have addressed it then. But now it's trial, so there's nothing I can do about that. I only have the evidence that I have in front of me, and that's what I have to address.

Responding to Thore's argument, Saunders stated,

If you look at Dr. [Demars]'s declaration, she actually talks about that it's possible that the anterior pain was nerve pain, not spinal nerve pain, but nerve pain, nonetheless. It's right in her declaration on the last page, so that's fine.

As far -- and, again, I mentioned the fact that he was complaining of -- after this accident of both anterior and posterior. It's just the anterior was the stuff he had beforehand and it went away. So, of course, he's making the same complaints. He's not saying that -- the anterior was anything new, Your Honor.

In granting Saunders's motion to exclude argument and evidence that Saunders had a preexisting symptomatic spinal condition, the trial court stated,

[B]ased upon what I've heard and the declaration of Dr. [Demars], I conclude that there's -- there's really not a factual basis at this point for finding that there was a preexisting symptom that was symptomatic of posterior pain prior to the 2013 car accident.

4

I appreciate Counsel's attempt to address this, but what I'm hearing is interpretations of medical records, as lawyers are obliged to do on behalf of their clients, but the best evidence, really, the only evidence, frankly the medical opinion, is from Dr. [Demars]. So you can show me at a later time, if you wish, the medical records that you're relying upon, that you're talking about. But at this point, Dr. -- the evidence of a preexisting posterior pain condition, there's not sufficient evidence for it to be introduced into trial. The plaintiff's motion is granted.

During her opening statement, Thore stated that there were three issues to consider during the trial: credibility, a condition called spondylolisthesis, and Saunders's "intermittent employment history." Regarding spondylolisthesis, Thore said,

> Spondylolisthesis, especially as it pertains to Mr. Saunders, is a congenital condition. Meaning it's something that you're born with. Dr. Russo will explain that it's something that can develop over the course of childhood and often occurs in teenagers.
>
> And what it is, it's basically a fracture in the bone in part of the bone in the spine. And when it occurs on both sides, as it did with Mr. Saunders, it causes the vertebra to slide out of place, putting pressure on the disks. Now, that sliding is graded. And in Mr. Saunders'[s] case, it was called "Grade 1 spondylolisthesis at L5-S1." That you will see in the imaging from Denver, Colorado, from the 2011 accident. . . .
>
> . . . .
>
> So the most important issue in this case when you're looking at was this surgery -- or these surgeries for the spondylolisthesis, for this preexisting condition, related in any way to the accident in 2013 or not really comes down to credibility. That's one of the central issues in this case.

Immediately after Thore's opening statement, out of the presence of the jury, the trial court told counsel,

> [A]t the beginning of your opening statement you clearly argued or said that he had a preexisting spondylolisthesis condition that was symptomatic at the time before the accident of 2013 occurred. My pretrial . . . .

5

. . . .

THE COURT: You clearly implied that in the opening statement you made. And my order is, "If appearing the defendants can offer no substantial admissible evidence the plaintiff had a low back symptomatic preexisting condition, any reference or mention of a preexisting spinal condition is prohibited."

. . . .

You cannot argue or ask questions about that to imply that he had a preexisting symptomatic back condition on the posterior before the accident.

Saunders asked the court to give an instruction to the jury. Thore objected to the instruction, arguing that it was a comment on the evidence. She asked that if a limiting instruction was to be given, it be given at the close of the case before the jury deliberated. The trial court granted Saunders's motion for a limiting instruction, and instructed the jury,

> As I told you yesterday, opening statements and closing statements, the statements of the lawyers, are intended to help you understand the evidence and the closing will help you to apply the law. But those statements are not evidence and any statement that is not supported by evidence you hear, that is the answers of witnesses, documents or tangible objects, should be disregarded.
>
> And here is a more substantive instruction: Mr. Saunders, Jason Saunders, the plaintiff in this case, has a condition and had a condition spondylolisthesis. However, there will not be evidence that Mr. Saunders had any symptoms from his spondylolisthesis, technically called grade 1, L5-S1 spondylolisthesis, prior to June of 2013, the accident in 2013. There will not be evidence he had low back complaints and no posterior or backside leg pains prior to the June 2013 accident. You can accept that as a fact.
>
> You will hear evidence that he did have anterior leg pain, front pain, prior to the June 2013 accident.
>
> And you will hear witnesses talk about this. That's the end of my instruction. But that's simply to give you a little more information.

6

Dr. Daniel Brzusek was one of the doctors who treated Saunders, both before and after the 2013 accident. Dr. Brzusek testified that spondylolisthesis was a "congenital defect between the front of the vertebrae and the back of the vertebrae." Brzusek explained that the level of Saunders's condition, grade 1, means that it is a "very minor slippage forward. . . . The lowest level." And, he stated that, while almost 10 percent of the population has this, the majority are asymptomatic.

Saunders asked, "[S]ince it's been established that [Saunders] did not have any low back pain and any back of the leg pain prior to the June 2013 accident . . . can we fairly say that [his] L5 S1 spondylolisthesis [that] existed prior to the accident was asymptomatic?" Brzusek replied, "Right. The only thing I can say about this is the accident did not cause the spondylolisthesis, it aggravated a preexisting asymptomatic spondylolisthesis, to be perfectly honest with you. To be very accurate, that's how it should be expressed."

Another physician who treated Saunders, Dr. Alan Brown, similarly described the condition,

> Most people who have degenerative conditions in their spine, including spondylolisthesis -- I suppose you have a grade 4, complete slip, you're going to have symptoms. But in the case of a grade 1, most people who have any degenerative changes, including spondylolisthesis, are asymptomatic.
>
> . . . .
>
> . . . No pain. They don't know they have it.

7

When asked where the symptoms would be if the L5-S1 spondylolisthesis was symptomatic, Brown answered, "Typically it's low back and/or leg. . . . back of the leg typically."

Dr. Brown also testified about Saunders,

So my understanding is -- these are the assumptions I'm making. Yeah, he had a bunch of degenerative conditions in his back before this car accident. But my understanding, based on what I read and my notes, is that he didn't have any pain in his back of significance or in the back of his right leg until this car accident.

So if you ask me what exactly happened in that car accident, I don't know. I mean, typically car accidents don't cause that type of thing to become symptomatic.

But if you -- I'm using the assumption, [w]ell, he had pain. There is no reason that I have to doubt that he had pain from the time of the car accident essentially on. So something must have happened. And so the car accident caused this preexisting condition to become symptomatic.

After the trial, the jury returned a verdict for Saunders. It awarded Saunders $160,339.69 for medical care following his 2015 surgery (the amount decided by the court), $37,216.77 for additional medical care following his 2015 surgery, $111,920 in past economic damages, $62,680 in future economic damages, and $382,000 in past and future non-economic damages, for a total verdict of $754,156.46. The trial court entered the judgment on the verdict on December 1, 2017. Thore appeals.

## DISCUSSION

Thore makes four main arguments. First, she argues that the trial court erred in finding that Dr. Russo's opinion lacked foundation as to Saunders's condition. Second, she argues that the trial court erred as a matter of law in

8

concluding that Saunders's spondylolisthesis was asymptomatic before the 2013 accident, and instructing the jury accordingly. Third, she argues that the trial court erred in ruling as a matter of law on Saunders's medical expenses from his 2015 surgery. Fourth, she argues that the trial court erred in excluding her testimony about the accident and evidence of vehicle damage and repair estimates.

I. Preexisting Medical Condition

Thore asserts that the trial court erred in ruling that Dr. Russo's opinion on Saunders's condition lacked foundation. And, she argues that the trial court erred earlier in granting Saunders's pretrial motion to exclude evidence that Saunders's spondylolisthesis was symptomatic before the 2013 accident, and instructing the jury accordingly.

The trial court has wide discretion in ruling on the admissibility of expert testimony and this court will not disturb the trial court's ruling if the reasons for admitting or excluding the opinion evidence are both fairly debatable. Miller v. Likins, 109 Wn. App. 140, 147, 34 P.3d 835 (2001).

A. Expert Testimony

Thore asserts that the trial court erred in preventing her from making an offer of proof and concluding that Dr. Russo's opinion of Saunders's preaccident condition lacked foundation.

ER 702 generally establishes when expert testimony may be utilized at trial: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto

9

in the form of an opinion or otherwise." ER 703 allows an expert to base his or her opinion on evidence not admissible in evidence and to base his or her opinion on facts or data perceived by or made known to the expert at or before the hearing. Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 352, 333 P.3d 388 (2014).

It is well established that conclusory or speculative expert opinions lacking an adequate foundation will not be admitted. Safeco Ins. Co. v. McGrath, 63 Wn. App. 170, 177, 817 P.2d 861 (1991). The decision whether to admit expert testimony under ER 702 is within the discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. Walker v. State, 121 Wn.2d 214, 218, 848 P.2d 721 (1993).

Thore cites Barci v. Intalco Aluminum Corp., 11 Wn. App. 342, 346 n.1, 522 P.2d 1159 (1974).

The footnote states,

The trial lawyer has a right to make the record for appeal. The trial judge must permit counsel to make an offer of proof in the absence of the jury so that the propriety of the proposed, but excluded, evidence may be examined as to admissibility. An offer of proof stands in the same position as a pleading and must be made so the trial court may rule advisedly and so an exception to the exclusion of the offered evidence may be preserved. The offer may be rejected (though it must be recorded) where the language of the offer is vague, general and not sufficiently specific to inform the trial court concerning the evidence that the proponent wishes to present. The exclusion by the court of a proffer of testimony by interrogating the witness or by counsel reciting the evidence that would be presented precludes review and is erroneous.

Id. (internal citations omitted).

10

Thore recited on multiple occasions what she expected from Dr. Russo's testimony. Pretrial, she told the court that Russo would testify that Saunders's spondylolisthesis was symptomatic, and that he based this opinion on Saunders's nerve pain before the accident. During trial she told the court,

> Dr. Russo's testimony would be and will be on the offer of proof that he simply disagrees with Dr. Demars'[s] interpretation of the symptoms reported. So the Court has gone on to exclude his opinions with regard to the first surgery by saying: No, Dr. Russo, you know, didn't -- ignored facts or just picked the ones that he thought were best.

> That's actually not what happened at all. What happened was Dr. Demars drew certain conclusions from the complaints of leg pain and said, You know what, I think this is related to the surgical hardware and not related to the back. Dr. Russo drew the opposite conclusion and said, No, it's not related to the surgical hardware. It's related to the back.

> Every day cases go to trial where forensic experts disagree with treating doctors and vice versa and those opinions are presented to the jury. And here the Court has foreclosed that by simply saying, Well, I don't -- I don't like Dr. Russo's opinion. It disagrees with the treatment provider so I'm going to say it lacks facts.

> It doesn't lack facts. He will testify on the offer of proof that he has facts to support that opinion. He reviewed the Demars notes. He reviewed the Demars declaration. And he drew a different conclusion from her. He didn't ignore it. He just interpreted it differently.

Thore had the opportunity to put Dr. Russo's testimony in the record. She could have filed a declaration of Dr. Russo or attached his report in opposition to Saunders's motion in limine to exclude Dr. Russo's opinion, which was filed on July 24, 2017, months before trial began. Midtrial, the trial court ordered a deposition of Dr. Russo. After reviewing the deposition and Dr. Russo's report, the

11

court observed that Thore had not disclosed pretrial the doctor's report. The court

stated,

> I earlier ruled that there was not a factual basis (thus no foundation) for Dr. Russo to opine that Mr. Saunders'[s] posterior leg pain predated the 2013 car accident at issue and thus was not caused by the 2013 accident. That is, he cannot opine that Mr. Saunders had a symptomatic pre existing [sic] spondylolisthesis prior to the accident.
>
> Based upon my review of the new deposition that I ordered, Dr. Russo does not appear to have another opinion on cause that is admissible (more probable than not). . . . That is not really a surprise since I excluded his opinion. Therefore he may not give an opinion on cause in trial.
>
> . . . .
>
> Doctor's new opinion on recovery at Duvall [Physical Therapy (PT)]: Finally, I have reviewed Exhibit 79 which is Doctor's report. While it is not terribly organized (and therefore I looked carefully to try not to miss anything), I see nothing that would indicate that Dr[.] Russo believed or opined that Plaintiff's symptoms ha[ve] mostly or nearly resolved at Duvall PT. In fact, my understanding from Dr[.] Russo's report is the opposite. Therefore, this new opinion that Plaintiff's symptoms had largely resolved at Duvall PT is excluded as it was not disclosed. As can be seen by my ordering of the deposition, as a possible remedy, I believe that all parties' evidence should be allowed if otherwise admissible and I try to accommodate disclosures. But here, it is now too late for plaintiff's doctors to respond. Even disclosure on the first day of trial might have been allowed. It was first disclosed at the deposition. The prejudice is too great. Failure to disclose a new opinion after the rulings in limine is deemed willful under the case law.

When Thore asked the court for it to allow an offer of proof on the excluded

testimony, the trial court stated: "Counsel, you had the opportunity. I have received

15 pages of emails. I've received -- you could have filed a declaration. There's

multiple ways for you to have made a record with Dr. Russo."

Thore argues that Dr. Russo's reliance on Saunders's medical records "fits squarely within ER 703." She asserts that there was a factual basis, a proper foundation, for Dr. Russo's opinion that Saunders's spondylolisthesis was symptomatic before the 2013 accident. She points to medical records from Saunders's visit to the Harborview Medical Center Pioneer Square Clinic. In a note dated December 26, 2012, Dr. Demars wrote,

> Patient here to complete paperwork for disability. . . . Right hip/leg and right shoulder pain is dull with sharp exacerbations. Exacerbated by staying in one position (sitting or standing too long). Also experiences neuropathic pain (sharp and electric sensations) that shoots down right hip but its triggers are unpredictable (occurs on average once every 15-20min), this is relieved by changing position and walking). Worst pain 8/10. Also experiences numbness and subjective weakness in right leg. . . . He has full ROM [Range of Motion] in his right hip, but right shoulder pain limits his ability to lift his arm above his head.

Thore asserts that these records support Dr. Russo's opinion. And, Thore argues that Dr. Russo reached a different conclusion than Dr. Demars, and that the difference of opinions of Dr. Demars and Dr. Russo should have gone to the jury.

> In her declaration, Dr. Demars stated,
>
> Having reviewed my notes and reflecting on my memory, I can say that during the time I was providing care for Mr. Saunders, he raised no concerns about back pain whatsoever. Nor did he provide me with a history of back pain in referencing any time prior to his visits with me.
>
> I also understand that there may be some confusion as to whether — at the time of my treatment of him — Mr. Saunders'[s] leg complaints were anterior (front side) or posterior (back side). In hindsight, perhaps I could have been more specific in my notes — but I can say unequivocally that the hip/leg pains he was experiencing in late 2012 and early 2013 were anterior (front side)

pains. Aside from my personal recollection, there are indications in my notes that help me confirm my recollection.

1. Typically, a reference by me to hip pain reference to pain emanating on the anterior or lateral leg.

2. If I had been referring to posterior pain, I assuredly would have described it as buttock pain and expected reference to low back pain — of which there was none. And if I had been concerned about nerve root impingement (which could have caused posterior hip/buttock and posterior leg pain), I would have . . . documented an exam evaluating for spinal tenderness.

3. I specifically referenced Mr. Saunders'[s] "pain between right hip and knee". This also tells me that the pain was anterior, and not posterior. Had the pain been posterior, I would have described it differently.

At his deposition, Dr. Russo testified that he concluded that Saunders's condition was symptomatic prior to the accident because "the leg pain [Saunders] had prior to your accident or after your accident was the same pain he'd been having all along." This is not a disagreement of two forensic experts viewing a cold medical record. This is a forensic expert disagreeing with the treating physician about what she observed and recorded. It is not merely a different medical opinion about the records, but a difference in facts on which the doctors relied. Dr. Demars, the treating physician and author of the preaccident notes, is in a better position to report the facts of what she observed in treating Saunders.

The trial court did not abuse its discretion in concluding that Russo's opinion lacked the proper foundation.

B. Factual Dispute on Causation

Thore argues further that there was a factual dispute as to whether Saunders's spondylolisthesis was symptomatic before the 2013 car accident. She

asserts that the testimonies from Saunders's own doctors acknowledged a disputed factual issue. She contends that, because of Saunders's inconsistent medical history, the jury was entitled to determine whether it believed Dr. Russo's interpretation of that medical history.

Thore points to Dr. Brown's statement, "[T]ypically car accidents don't cause that type of thing to become symptomatic." She also points to another portion of Dr. Brown's testimony:

> Q. On a more-probable-than-not basis -- well, first of all, was that a -- from the records you reviewed, was that a reasonable surgery to conduct in 2017?
>
> A. Yes. They had done an adequate decompression of L5-S1, and now he's got leg pain again, and he's got stenosis at L4-5, that's reasonable.
>
> Q. And on a more-probable-than-not basis, would -- you used the words "but for" -- but however you're comfortable with, was that 2017 surgery, would that have been related to the 2013 accident?
>
> A. Yeah, I'm -- you know, the first surgery I'm pretty comfortable with, really comfortable with. The other one, that's a little bit less strong. But I think if you used more-probable-than-not, sure. It's more-probable-than-not that the additional surgery at L4-5 was from the car accident also, it's just not as not -- not as more-probable-than-not as the L5-S1 in my opinion. But it still, I think, meets that standard.
>
> Q. And what is it that makes you reach that conclusion?
>
> A. Well, I mean, he had some -- I think that the distribution of his pain, he did have some distribution of pain before the car accident, which was more in the L4-5-ish area. The records are pretty soft on that. And if you read them carefully, which I did, it didn't really seem like the kind of description you get for L4-5 radiculopathy or nerve root. It seemed more like the kind of pain you'd get from a peripheral nerve supplying the skin and stuff.
>
> So just because of the fact that he had some anterior stuff from his previous accident makes me just a little bit less strong on that

one than the L5-S1. The L5-S1 one was pretty clear to me that wasn't there, he had an accident, started having all these problems there. The other one just wasn't as clear to me. That's all.

Q. But you still feel comfortable on a more-probable-than-not basis that it was the accident?

A. I think if I just need, you know, 51 percent or more, I'm good with that. No problem.

But, Dr. Brown's testimony on a more probable that not basis that the accident caused the need for surgery does not support Thore's argument that the Sauder's doctors had a factual dispute on preaccident symptoms.

Next, Thore argues that Dr. Brzusek "acknowledged that L5-S1 nerve pain is not limited the back of the leg. L5 pain is also lateral, on the side of the leg." Brzusek testified,

Pain is -- because of the distribution of the nerves, the spinal nerve and they divide into various nerve roots, okay. The one you will feel is L5. So L2 if I turn up the light to that, that just goes on at L2 L3 L4 L5 S1. Same thing with your leg. I can almost tell you which levels involved by the way you complain about your pain. . . . L5 is the outside portion of your thigh and partially the back of your thigh. And S1 is the back of your thigh, your butt, goes down to your calf and then it goes to the outside of the foot. S1 is the outside of the foot, L5 middle, L4 then goes up the front of the leg already. So we can almost map all this stuff out.

Q. So with an L5 S1 spondylolisthesis, the pain would be felt on the, essentially the back of the leg, right?

A. Essentially the back of the leg, a little bit lateral if you're dealing with L5, so to the side of the leg a little bit. But most of it is going to be back. . . . L5, S1 is back of the thigh, back of the calf, foot, mostly of the lateral, the outside of the aspect of the foot.

But, Dr. Demars avowed that Saunders did not have pain in his back or the back of his leg, symptoms associated with Saunders's grade 1, L5-S1 spondylolisthesis. Demars testified in her declaration that if Saunders had made

16

posterior (buttock or back) complaints, she would have documented an examination for spinal tenderness. Dr. Demars also stated in her declaration,

> Furthermore, Mr. Saunders'[s] neuropathic "electric" pain between right hip and knee in combination with the lateral right leg numbness noted on my exam from 12/21/2012 is more consistent with injury to the lateral cutaneous nerve than from a nerve root. The fact that these pains were affected by winter weather and changed in barometric pressure implies that they were most likely related to the femur fracture suffered in 2011 and the titanium rod placed in his right leg. This is further supported by physical therapy's assessment that patient's subjective weakness/functional impairment at the time were most consistent with "rectus femoris strain with early hip degenerative changes."

Demar's declaration explains the nerve pain Thore pointed to below, and continues to highlight on appeal. Demars did not find that they were consistent with symptomatic spondylolisthesis.

At the time the court granted the pretrial motion, Thore had not presented any medical records or testimony disputing Dr. Demars's conclusions. Again, the testimony is not in dispute as to preaccident symptoms.

Thore also contends that the court's reliance on Harris v. Drake[1] was untenable. In granting Saunders's second motion in limine, the trial court ordered, "It appearing that defendants can offer no substantial admissible evidence that plaintiff had a low-back symptomatic pre-existing condition (as required by Harris v. Drake), any reference or mention of a preexisting spinal condition is prohibited."

In Harris, Drake rear-ended Harris. 152 Wn.2d at 484. Harris injured his back and shoulder in the accident. Id. Harris sued Drake. Id. At trial, Drake admitted liability, and at the end of the evidence, the court directed a verdict for

---

[1] 152 Wn.2d 480, 99 P.3d 872 (2004).

Harris on causation and special damages. Id. at 485. On appeal, Drake argued that the trial court erred in granting a directed verdict on the issue of causation. Id. at 493. The court stated,

> Even allowing for the possibility of a preexisting condition, the defense failed to show that such condition was symptomatic prior to the accident. When an accident lights up and makes active a preexisting condition that was dormant and asymptomatic immediately prior to the accident, the preexisting condition is not a proximate cause of the resulting damages.

Id. at 494.

There was not a factual dispute among Saunders's experts as to his preaccident symptoms. The trial court correctly found that Thore had presented insufficient evidence disputing Dr. Demars's conclusion about Saunders's preexisting condition. The trial court properly relied on Harris and did not abuse its discretion in granting the motion to exclude evidence that the condition was symptomatic prior to the accident. Therefore, the trial court did not err when it instructed the jury accordingly.

## II. Medical Expenses

Thore contends next that the trial court erred in granting Saunders's CR 50 motion for a judgment as a matter of law on Saunders's medical expenses through his 2015 surgery.

Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party. Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29,

948 P.2d 816 (1997). The court must draw all favorable inferences that may be reasonably evinced in favor of the nonmoving party. Id. at 29-30. This court reviews de novo a granted motion for judgment as a matter of law. Gomez v. Sauerwein, 180 Wn.2d 610, 616, 331 P.3d 19 (2014).

During the trial, Saunders moved for a directed verdict that his two surgeries after the 2013 accident were due to the car accident, and not his L5-S1 spondylolisthesis. The trial court denied the motion regarding the 2017 surgery, but granted the motion as to the 2015 surgery.

Regarding the 2015 surgery, Thore argued that, based on the evidence, a reasonable jury could find that the 2015 surgery was not related to the car accident. Thore argued that both Dr. Brown and Dr. Brzusek's opinions that the 2015 surgery related to the car accident could be discounted, because in Saunders's medical records, "there was no complaint of posterior leg pain until several weeks after the accident." Thore asserted that this was outside of the time frame supported by Saunders's own experts. Thore also argued that Saunders's experts testified that trauma does not typically cause spondylolisthesis to become symptomatic. Saunders responded that both doctors, as well as Dr. Russo, testified that they would expect someone to have low back pain and/or pain down the back of your leg within a few days or a few weeks.

On appeal, Thore references trial counsel's argument to claim that there is evidence that Saunders's 2015 surgery was due to a preexisting condition, and not accident related.

19

Dr. Brzusek testified that the car accident aggravated a preexisting asymptomatic spondylolisthesis. Dr. Brown also testified that the car accident caused this preexisting condition to become symptomatic. Thore does not point to substantial evidence or reasonable inferences to discount the doctors' opinions that the 2015 surgery was due to the car accident.

The trial court did not err in granting the motion for a directed verdict.

III. Exclusion of Accident Evidence

Finally, Thore argues that the trial court erred in excluding her testimony about the accident, as well as vehicle photographs and repair estimates.

Pretrial, Saunders moved to preclude Thore's testimony about the force of the impact of the car accident. Saunders also moved to exclude Thore's photographs showing damage to the parties' vehicles, as well as repair estimates. The trial court granted Saunders's motion to exclude repair estimates and testimony about the damage to the parties' vehicles. It stated, "They're simply not relevant, because there's no way for Counsel to argue that a small or large amount of property damage to a vehicle can be related to the physical injuries suffered by a particular individual absent some expert testimony on that." It reserved ruling on excluding Thore's testimony on the accident and the photographs. The court later ruled that Thore could not testify "to the circumstances of the car accident." And, it stated that the pictures were "not relevant for any particular issue in this case."

A lay witness may give an opinion, so long as it is (a) rationally based on her perceptions, (b) helpful to the jury, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702. ER 701; State v. Kinard,

20

39 Wn. App. 871, 874, 696 P.2d 603 (1985). The trial court is vested with wide discretion under ER 701. Id.

Thore argues that the evidence that the court excluded was relevant to determine Saunders's injuries as well as to assess his credibility. Thore further contends that Saunders's testimony opened the door to the subject. She points to where Saunders described the car accident as a "really heavy hit and then I was off to the side of the road." He also testified, "I hit the door and my head hit the window."

After the trial court restricted Thore's testimony about the accident, Thore's counsel asked, "What about whether the vehicle was pushed to the side of the road as a result of the impact, which was at issue and did I impeach Mr. Saunders on that?" The trial court stated,

> Mr. Saunders agreed with your impeachment. I think that issue is over. He didn't remember and still doesn't remember, apparently, whether he was pushed to the side of the road or they drove to the side of the road. So he simply had no memory of -- or he agreed with what you said.

The court determined that Thore's testimony as to the force of the impact of the accident was not relevant to Saunders's injuries. It reasoned that Thore lacked a scientific basis to opine on the force of the impact. It concluded that property damage estimates were also not relevant because, absent expert testimony, there was no way for counsel to argue that the amount of car damage could be related to the injuries suffered. Thore was not in the car with Saunders, so she would not have firsthand knowledge of what happened to his body at the point of impact.

And, Thore conceded that she did not anticipate being able to lay the proper foundation for the repair estimates.

Under ER 701 and ER 702, Thore is not qualified to testify as to the force of the impact, and how it relates to injuries sustained. The trial court did not abuse its discretion in excluding Thore's testimony regarding the collision, the photographs, and the repair estimates.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Chun, J._         _Mann, A.C.J._