IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 83316-2-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RONALD JEFFREY GUNTER, | |
| Appellant. | |

BOWMAN, J. — Ronald Jeffrey Gunter appeals his jury conviction for domestic violence (DV) first degree arson with a DV aggravator, alleging several errors occurred during his bifurcated trial. Gunter argues that a detective's improper opinion testimony deprived him of his right to a fair trial, that the court erred by admitting irrelevant prior DV convictions during the aggravator phase of his trial, and that the prosecutor committed misconduct by misstating the law to the jury during rebuttal closing argument. Gunter also asserts ineffective assistance of counsel and cumulative error. We affirm.

FACTS

Gunter is Kristi Dutson's estranged brother. Shortly before 3:00 a.m. on May 30, 2019, Gunter went to Dutson's home uninvited. A security camera above Dutson's front door recorded Gunter pouring liquid from a plastic gas container onto the doormat. Gunter then appears to ignite the liquid and run away.

This opinion bases the citations and pin cites on the Westlaw online version of the cited material.

Dutson's son, Ethan,[1] was awake in his second-floor bedroom and looking out his window when he saw an "orange glow" coming from the front porch. He went downstairs to investigate and saw smoke and flames breaching the front door. The window above the door and the two windows on either side of the door had exploded and flames were coming through the openings. Ethan ran to his parents' room, screamed "fire" several times, then called 911.

The Bellevue Fire Department and police arrived at the home and firefighters extinguished the flames. Dutson then watched the front door surveillance footage from the security camera and recognized the individual setting the fire as her brother, Gunter. Meanwhile, Bellevue Police Detective Gregory Oliden walked the scene, took photographs, and documented his observations. He smelled a "strong" odor of gasoline around the outside of Dutson's house, especially around the front door area and north side of the house. He also viewed Dutson's surveillance footage. Because of extensive structural and smoke damage, the Dutsons had to move out of their home for four to six months during repairs.

The State charged Gunter with DV first degree arson. It later amended the information, alleging the crime was an aggravated DV offense and part of an ongoing pattern of abuse. Gunter did not deny starting the fire. Instead, he claimed diminished capacity.

At the bifurcated trial, Detective Oliden testified that based on everything he saw on May 30, 2019, "someone was trying to burn down this house." The

_____

[1] We refer to Ethan Dutson by his first name for clarity.

parties then offered competing expert testimony about Gunter's capacity to formulate the requisite intent. In closing, Gunter argued that when he set the fire, he was suffering from a manic episode due to his bipolar disorder and could not appreciate the consequences of his actions.

A jury convicted Gunter of first degree arson at the end of the trial phase.[2] By special verdict, it found Gunter and the Dutsons were members of the same family at the time he set the fire. The trial court then moved to the aggravator phase. The State offered and the court admitted certified copies of court records showing Gunter's prior convictions for seven DV offenses between 2008 and 2017. The jury determined by special verdict that the crime was an aggravated DV offense.

Gunter moved to set aside the jury's verdict as to the aggravator, asserting that insufficient evidence supported an ongoing pattern of abuse. The court denied his motion, imposed an upward exceptional sentence of 101.5 months, and entered findings of fact and conclusions of law in support of the exceptional sentence.

Gunter appeals.

ANALYSIS

Gunter argues Detective Oliden denied him a fair trial by impermissibly expressing an opinion about his guilt, the trial court erred by admitting several irrelevant prior DV convictions during the aggravator phase of his trial, and the prosecutor committed misconduct during rebuttal closing argument of the

---

[2] The court also gave jury instructions for the lesser included offenses of reckless burning in the first degree and arson in the second degree.

aggravator phase of trial. He also asserts ineffective assistance of counsel and cumulative error.

Opinion Testimony

Gunter argues Detective Oliden's testimony impermissibly expressed an opinion about his guilt to the jury, depriving him of his right to a fair trial. We disagree.

We review a trial court's decision to admit expert testimony for an abuse of discretion. State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). The court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. State v. Quaale, 182 Wn.2d 191, 197, 340 P.3d 213 (2014). An evidentiary decision is manifestly unreasonable if it is contrary to law. Id. at 196.

Under ER 701, a lay witness may express an opinion that is (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of ER 702. Under ER 702, an expert may express an opinion if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. The witness must be qualified as an expert by knowledge, skill, experience, training, or education. ER 702.

"Generally, no witness, lay or expert, may give an opinion, directly or inferentially, on the defendant's innocence or guilt." State v. Johnson, 152 Wn. App. 924, 930, 219 P.3d 958 (2009). Impermissible opinion testimony relating to

a defendant's guilt violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). But "[t]estimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704. Whether testimony amounts to an impermissible opinion about the defendant's guilt depends on the circumstances of the case, including (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact. Johnson, 152 Wn. App. at 931.

Detective Oliden testified in his capacity as an arson investigator with training, continuing education, and experience in identifying arson since 2017.[3] He walked the jury through his investigation at the Dutson residence on May 30, 2019. He told the jury what he observed when he arrived at the scene, including a charred front door, doormat, and door frame, smoke damage to the entryway and eaves, and blackened and broken windows above and next to the front door because of the intense heat of the fire. He also smelled gas outside the front area of the house and on the north side. But he explained that while he smelled gasoline on the north side of the home, he found no evidence that someone set a fire there. The prosecutor and Detective Oliden then had the following exchange:

> Q.  . . . Were you able to form an opinion about what you thought was going on in this area?

---

[3] Gunter does not contest Detective Oliden's qualifications to testify as an expert arson investigator.

A.    Yes.  I believe that based on what I saw at the front door and the fire damage, and based on what I saw on the surveillance footage, when I smelled the gasoline on this [north] side of the house, I believe that somebody was trying to burn down this house.

Defense counsel objected as "improper opinion."  The court overruled the objection.[4]

Citing State v. Farr-Lenzini, 93 Wn. App. 453, 970 P.2d 313 (1999), Gunter argues that Detective Oliden's testimony amounts to an opinion on Gunter's state of mind, which was "the core issue for determining guilt."  In Farr-Lenzini, a Washington State Patrol trooper observed the defendant drive her car recklessly.  Id. at 456.  The trooper activated his lights and siren, but the defendant kept driving for over four miles.  Id. at 457-58.  The State charged the defendant with attempting to elude a police officer.  Id. at 458.  At trial, the trooper testified that the defendant's driving showed that she " 'was attempting to get away from me and knew I was back there and refusing to stop.' "  Id.  The defendant testified that she did not see or hear the patrol car at first.  Id. at 457.  Division Two of our court held that the trooper's testimony amounted to an improper opinion.  Id. at 465.  The court explained that "there was an insufficient foundation to qualify the trooper as an expert for purposes of expressing an opinion as to [the defendant]'s state of mind."  Id. at 461.  Nor was the opinion admissible lay testimony.  Id. at 462.

---

[4] The prosecutor also asked Detective Oliden whether someone set a fire on the north side of the house.  In response, he testified, "I felt that that was going to be the intent."  But defense counsel objected and the prosecutor withdrew the question.  Error is generally not available to a defendant where a question is asked but withdrawn.  See State v. Hunter, 183 Wash. 143, 163, 48 P.2d 262 (1935).  And at oral argument, Gunter conceded that this testimony was not the focus of his argument on appeal.

This case is different than <u>Farr-Lenzini</u>. Here, Detective Oliden was qualified to testify as an expert arson investigator. And his opinion that somebody tried to "burn down this house" was within his area of knowledge. He based his testimony that somebody intentionally set the house on fire on his training and experience as well as his observations at the scene. Those observations included the smell of gasoline on two sides of the home, security footage of Gunter pouring liquid from a plastic gas can onto the front porch, igniting the liquid, and running away, and the damage caused by the intensity of the resulting fire.

And Detective Oliden's testimony did not go to "the core issue" of Gunter's state of mind. Gunter conceded that he intentionally lit the fire but argued through expert testimony that he could not form the capacity to do so maliciously. His expert psychiatrist testified that "[i]t's like you're dealing with the judgment of a [three]-year old. . . . It's like, 'Yeah, I've got a lighter. Yeah, I can start stuff on fire. Yeah, look, I set the curtains on fire.' " So, "to a manic person whose judgment is horrible, . . . it probably seemed like a perfectly appropriate thing to do at the time." But Detective Oliden's testimony commented on only the origin of the fire. It did not touch on the "core issue" of whether Gunter appreciated the nature of his actions. Detective Oliden did not offer an improper opinion on Gunter's guilt.

7

Admissibility of Prior Convictions

Gunter argues that the trial court erred by admitting several irrelevant prior convictions for DV as evidence that he committed an aggravated DV offense.

Trial courts determine whether evidence is relevant and admissible, and we review the trial court's rulings for abuse of discretion. State v. Brockob, 159 Wn.2d 311, 348, 150 P.3d 59 (2006). Evidence is "relevant" if it tends "to make the existence of any fact . . . of consequence to the determination of the action more . . . or less probable." ER 401. The threshold to admit relevant evidence is very low. State v. Briejer, 172 Wn. App. 209, 225, 289 P.3d 698 (2012). Even minimally relevant evidence is admissible. Id.

To find that a crime is an aggravated DV offense, the State must show beyond a reasonable doubt that (1) the victim and the defendant were family or household members and that (2) the offense was part of an ongoing pattern of psychological, physical, or sexual abuse manifested by multiple incidents over a prolonged period of time. RCW 10.99.020(4); RCW 9.94A.535(3)(h)(i), .537(3). The victims of the prior abuse need not be the same victim or victims of the current offense. State v. Sweat, 180 Wn.2d 156, 163-64, 322 P.3d 1213 (2014). And there is no set amount of time required for finding a prolonged pattern of abuse. See State v. Atkinson, 113 Wn. App. 661, 671-72, 54 P.3d 702 (2002) (DV abuse over 7 to 10 months during which at least three incidents of abuse required victim to seek medical attention sufficient to establish ongoing pattern of abuse); State v. Daniels, 56 Wn. App. 646, 652-54, 784 P.2d 579 (1990) (multiple incidents of child abuse within the 5-month charging period enough to

support prolonged pattern of abuse); State v. Epefanio, 156 Wn. App. 378, 392, 234 P.3d 253 (2010) (affirming jury finding that 5 to 6 weeks of sexual abuse was "a prolonged period of time").

Gunter argues that five of his past DV convictions admitted by the trial court are irrelevant to whether he engaged in an ongoing pattern of abuse. Specifically, he challenges the relevance of a 2011 conviction for DV third degree theft, three convictions for violating a DV no-contact order (NCO) in 2016, 2017, and 2018, and a 2018 conviction for DV malicious mischief in the third degree.[5] According to Gunter, these prior convictions are not relevant because "these convictions could not rationally establish abusive conduct in the absence of any factual basis revealing the nature of the illegal conduct." We disagree.

Gunter's convictions for violating DV NCOs show that he repeatedly contacted intimate partners or family members who sought legal protection from his "abuse, violence, harassment, stalking, neglect, or other threatening behavior." See RCW 7.105.900; former RCW 26.50.110 (2017). His conviction for DV malicious mischief in the third degree shows that he knowingly damaged the property of an intimate partner or family member. See RCW 9A.48.090; RCW 10.99.020(4). And his DV third degree theft conviction shows that he unlawfully took property from an intimate partner or family member. See RCW 9A.56.050; RCW 10.99.020(4). These incidents tend to make it more probable

---

[5] The trial court also admitted two prior DV assault convictions from 2008 and 2016. Those convictions are not at issue in this appeal.

that Gunter's current offense was part of an ongoing pattern of abuse. The trial court did not err by admitting evidence of Gunter's prior DV convictions.[6]

Prosecutorial Misconduct

Gunter argues that the prosecutor committed misconduct during rebuttal closing argument by misstating the law of the case and misleading the jury during the aggravator phase of trial. Again, we disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the conduct was both improper and prejudicial. State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). Prejudice is established where there is a substantial likelihood that the misconduct affected the jury's verdict. Id. We review a prosecutor's comments in the context of the entire record and the circumstances at trial. Id.

During closing argument, the prosecutor has wide latitude to argue reasonable inferences from the evidence. State v. Thorgerson, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). But a prosecutor may not misstate the law to the jury or mislead it. State v. Warren, 165 Wn.2d 17, 26-27, 195 P.3d 940 (2008). Misstating the law of the case to the jury is a serious irregularity having the grave

---

[6] Gunter claims that defense counsel was ineffective for failing to argue that the court should have excluded his prior DV convictions under ER 403. According to Gunter, the court likely would have excluded the evidence because at a post-trial hearing, the trial judge said the convictions "held very little weight" as evidence of a pattern of abuse. To establish ineffective assistance of counsel, Gunter must show that counsel's performance was deficient and that it prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). But the only legal basis Gunter offers to support his contention that the evidence was inadmissible under ER 403 is that it likely confused and misled the jury into finding the aggravating factor based on only ongoing DV instead of ongoing abusive conduct. Because we conclude that Gunter's prior DV convictions tend to show abusive conduct, we also reject his ineffective assistance of counsel claim.

potential to mislead the jury. State v. Davenport, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984).

Gunter argues that the prosecutor misstated the law and "egregiously misled the jury" during the DV aggravator phase of the trial when she "essentially told the jury it could not concern itself with the lack of evidence presented by the State." He claims her argument conflicted with the court's instruction to the jury that a reasonable doubt is "a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence." But Gunter mischaracterizes the State's rebuttal argument.

In closing argument, defense counsel told the jury that nothing in the court's instructions says that "just because something is listed as a [DV] crime, that, therefore, it's part of some sort of pattern of psychological . . . abuse." She highlighted the redacted judgment and sentence for Gunter's 2011 DV third degree theft conviction, arguing that because there is no information about the underlying facts of the crime, including who the victim was, the jury could not find that the incident contributed to an ongoing pattern of abuse. She then called the jury's attention to the State's failure to call any witnesses to prove the aggravating factor. Defense counsel noted that Dutson testified during the guilt phase of the trial and then asked the jury, "[W]hy didn't we hear from Krist[i] Dutson? Why didn't we hear from the family? Why didn't we hear from individuals relating to these prior convictions?"

In rebuttal, the prosecutor correctly explained to the jury that the State need not show that Gunter's prior DV convictions involved the same victims as

the current offense to prove the DV aggravating factor. And she told the jury that

"[j]ust like you were given instructions in the first part of this jury trial and the

second one, you can't speculate as to which evidence came in and why or if

evidence did not come in and why." The State argued that the certified records

of Gunter's convictions sufficiently supported finding that he committed the

aggravator:

> There's nothing that requires each of these to be [DV] offenses, but the State still has proved those to you, as well.
> I'm not asking you to speculate about who these prior victims are. You can't speculate as to why Krist[i] Dutson could not come in for the second portion of this trial.
> [DEFENSE COUNSEL]: Objection; facts not in evidence, improper argument.
> [PROSECUTOR]: Your Honor, this is rooted in the jury instruction and is direct rebuttal to what was stated in Defense's closing.
> [DEFENSE COUNSEL]: What the State is saying is inaccurate.
> [JUDGE]: Sustained.
> [PROSECUTOR] (Continuing): I'm not asking you to speculate. I'm asking you to just look at what the evidence is for this portion. And you're all reasonable, smart people, so you can make your own determinations and conclusions based on those certified documents.

Viewed in context, the State responded to defense counsel's argument

that it had the burden to show the identity of Gunter's prior victims and to explain

why it did not call Dutson as a witness in the aggravator phase of the trial. The

State did not argue that the jury could not consider a lack of evidence in deciding

whether the State met its burden of proving an ongoing pattern of abuse.

Instead, the State accurately argued that the law does not require it to prove the

identity of Gunter's prior victims to establish that pattern. See RCW

9.94A.535(3)(h)(i); Sweat, 180 Wn.2d at 163-64. Similarly, the State accurately

12

commented that the jury could not speculate about why Dutson did not testify in the second part of the trial. Dutson's testimony establishing herself as a prior victim of Gunter's DV was not relevant to any issue in the aggravator phase of the trial. And nothing in the prosecutor's comment suggested to the jury that they could not consider the lack of facts and circumstances supporting Gunter's prior convictions in reaching its determination. The prosecutor's comments were not improper.

But even if the prosecutor's comments were improper, they were in response to defense counsel's closing argument and do not warrant reversal. See State v. Fleeks, __ Wn. App. 2d __, 523 P.3d 220, 241 (2023) ("Even improper statements are not a basis for reversal when they occur as a fair response to defense counsel's arguments or where otherwise provoked."). And Gunter shows no prejudice because of the State's comments. The court instructed the jury twice—before the trial phase and again before the aggravator phase—that it could base its reasonable doubt determination on "the evidence or lack of evidence." We presume that jurors follow the court's instructions. State v. Edvalds, 157 Wn. App. 517, 525, 237 P.3d 368 (2010).

We reject Gunter's argument that we must reverse his conviction because of prosecutorial misconduct.[7]

---

[7] Gunter also argues that as much as "defense counsel in any way waived the prosecutorial misconduct challenge or contributed to the prejudicial effect by failing to ensure the trial court struck the prosecutor's offending argument or offered a curative instruction, defense counsel was ineffective." Because we address Gunter's argument on its merits and determine that the prosecutor did not commit misconduct, we need not address this claim.

Cumulative Error

Gunter argues that cumulative error deprived him of a fair trial. The cumulative error doctrine entitles a defendant to a new trial "when cumulative errors produce a trial that is fundamentally unfair." State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Reversal is not required where the errors are few and have little to no effect on the outcome of the trial. State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Because no trial error occurred here, the cumulative error doctrine does not apply.

In sum, Detective Oliden did not offer an improper opinion on Gunter's guilt, the trial court did not err in admitting evidence of Gunter's prior DV convictions during the aggravator phase of his trial, the prosecutor's statements during closing argument did not amount to misconduct, Gunter does not show ineffective assistance of counsel, and the cumulative error doctrine does not apply. We affirm.

_____
Brennan, J.

WE CONCUR:

_____        _____
Díaz, J.                          Chung, J.

14